ROLLINS et al. v. BOARD OF COM'RS OF RIO GRANDE COUNTY.

(Circuit Court of Appeals, Eighth Circuit.   November 7, 1898.)

No. 1,029.

1. MUNICIPAL CORPORATIONS — ACTION ON COUNTY WARRANTS— BURDEN OF PROOF.
    In an action on county warrants, where the only defense is that the county had exceeded the constitutional limit of indebtedness, the introduction of the warrants, properly executed, and proof of their ownership by the plaintiff, make a prima facie case, and place on the defendant county the burden of proving by competent evidence the facts necessary to show that, when the indebtedness represented by the warrants was created, the county was incapacitated by the limitation from incurring the same.

2. SAME—CONSTITUTIONAL LIMIT OF INDEBTEDNESS.
    In determining the indebtedness of a county of Colorado with reference to the limitation placed on such indebtedness by the state constitution,

debts created prior to August 1, 1876, when the state was admitted into the Union, and the constitution became effective, are not to be considered.

3. SAME—EVIDENCE—STATEMENTS OF COUNTY FINANCES.

Gen. St. 1883, p. 286, § 150, requires boards of county commissioners to make out semiannual statements at their regular sessions in January and July in each year, which statements shall show the indebtedness of the county in detail, and contain a detailed account of the receipts and expenditures for the preceding six months, and shall be published or posted as therein prescribed, and be entered of record by the clerk. *Held*, that statements designated "quarterly reports," which did not purport to have been made out through any action of the county board, nor conform to the requirements of the statute in giving details of receipts or expenditures, and which were not shown to have been published or posted, and were merely certified by the county clerk as being correct statements of the expenditures of the county as appeared from the books of his office, were not receivable in evidence, as the statements required to be made by the statute, to establish the indebtedness of the county at the times of their dates.

4. SAME—STATEMENTS AS OFFICIAL RECORDS.

Nor were such statements admissible, under the general rules of evidence, as official records to prove that the indebtedness of the county was the amount therein recited, being merely the conclusions of the clerk drawn from whatever books or papers he may have examined in reaching such result, and the books and records of the office being themselves the primary evidence of whatever facts they show.

5. SAME—EVIDENCE OF DATE OF INDEBTEDNESS—DATE OF WARRANT OR CLAIM.

Neither the date of a county warrant nor of the claim on which it was issued is evidence of the date of the creation of the indebtedness.

6. SAME—RECITALS IN CLAIM.

A recital in a claim filed against a county of the date when the services were rendered on account of which the claim is made is merely evidence of such date to go to the jury, and a court is not justified in basing its charge on the assumption that such recital is conclusive.

7. SAME—COUNTY RECORDS AS EVIDENCE.

Entries in the records of a county, made by the clerk in due course of business, either under the express provisions of a statute or in the usual course of official duty, are admissible in evidence in behalf of the county, and it is no objection to the admissibility of such an entry, offered for the purpose of showing the date when an indebtedness represented by a warrant sued on was created, that it was in the form of a tabulated statement of the expenses of an election held on a certain date, identifying by number, date, and name of payee the warrant in suit as one issued in payment for services rendered at such election.

8. SAME—CLAIM FILED AGAINST COUNTY AS EVIDENCE.

Where a county warrant declared on and introduced in evidence shows on its face that it was issued on account of a claim bearing a certain number, a certified copy of such claim from the county records is admissible on behalf of the county as evidence of the date of the rendition of the services for which the claim was filed.

9. SAME—TRIAL—TABULATING EVIDENCE IN AID OF JURY.

In an action against a county on a large number of warrants of different dates, tried to a jury, and contested on the ground that the indebtedness represented by such warrants was created when the county was indebted beyond the constitutional limit, which involves the ascertainment of the date of the creation of each item of such indebtedness, and of the indebtedness of the county on each of such dates, it is proper for the court, in aid of the jury, to admit the testimony of a competent person, who has prepared a tabulated statement in writing, summarizing the material facts shown by the books and records, which are themselves in evidence.

In Error to the Circuit Court of the United States for the District of Colorado.

E. F. Richardson (Thomas M. Patterson and Horace N. Hawkins, on the brief), for plaintiffs in error.

Charles M. Corlett, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. This action was brought to recover judgment on a number of county warrants issued by the defendant county in the years 1882, 1883, 1884, 1885, and 1886. Upon the trial before the court and jury the warrants were introduced in evidence, it being admitted that they were properly executed, the defense relied on being the claim that at the dates of the creation of the indebtedness represented by the warrants the county had incurred debts up to or in excess of the limit fixed by the constitution of Colorado, and therefore the indebtedness represented by the warrants sued on, and the warrants themselves, were invalid and void. Upon the conclusion of the evidence, the court, in effect, instructed the jury that the defense was sustained by the evidence, and that the verdict must be for the defendant. During the introduction of the evidence many exceptions were saved on behalf of the plaintiff, and upon these and the exceptions taken to the charge of the court, errors to the number of 68 are assigned, but it will not be necessary to consider these seriatim, as the questions presented thereby are controlled by a few general propositions.

In the course of the charge the court, referring to the warrants sued on, said to the jury that:

"There is no doubt about the honesty of these debts. These warrants were issued for claims which were good and valid against the county, but, the constitution having provided that a county shall not exceed certain limits in regard to its indebtedness, if they do, it cannot be collected."

Under such circumstances the introduction of the warrants, properly executed, and proof, which was introduced, of the ownership thereof by the plaintiff corporation, made out a prima facie case in favor of the plaintiff, and thereby the burden was placed upon the defendant county to prove by competent evidence the facts necessary to sustain the defense pleaded, to wit, that when the indebtedness represented by the warrants sued on was created the county was incapacitated from incurring the same by reason of the limitation imposed by the state constitution upon the debt-creating power of the county. Board v. Standley (Colo. Sup.) 49 Pac. 29. The constitution containing the limitation became operative on the 1st day of August, 1876, when Colorado was admitted into the Union as a state, and by its terms it is not applicable to debts contracted before its adoption; or, in other words, in determining whether a county has reached the constitutional limit, indebtedness created before August 1, 1876, is not to be included in the computation. Lake Co. v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651. For the purpose of proving the amount of the indebtedness existing against the defendant county at different dates, the defendant offered, and over the objection of plaintiff there was received, in evidence a number of reports, called "quarterly reports," certified to by the clerk of the county; and in the charge to the jury the court accepted the recitals contained in these reports as conclusive evidence of the

90 F.—37

amount of the indebtedness then outstanding against the county; and thus we have presented the question whether these reports, or the recitals therein contained, were competent evidence on the issues arising in this case. In the General Statutes of Colorado for 1883 (page 286, § 150) it is enacted that:

"It shall be the duty of the board of county commissioners of each county, to make out semi-annual statements at the regular sessions in January and July, at which times, they shall have such statement published in some weekly newspaper, published in the county, if there be such published, and if there be no newspaper published in the county, such commissioners shall cause such statements to be posted in three conspicuous places in said county, one of which shall be at the court house door, and such statement shall show the amount of debt owing by the county, in what the debts consist, what payments if any have been made upon the same, the rate of interest that such debts are drawing; also detailed account of the receipts and expenditures of the county for the preceding months in which shall be shown, from what officer and on what account any money has been received and the amounts and to what individuals, and on what account any money has been paid and the amounts, and shall strike the balance showing amount of deficit, if any, and the balance in the treasury, if any, and the statement thus made, in addition to being published, as before specified, shall also be entered of record by the clerk of the board of county commissioners in a book to be kept by him for that purpose only, which book shall be open to the inspection of the public at all times."

Counsel for the defendant, in offering the reports, cited the section just quoted as the authority for their competency. The reports received in evidence were in the following form:

Quarterly Report of Expenditures of Rio Grande County for the Quarter Ending September 30, 1882.

| | |
|---|---:|
| Total warrants outstanding July 1, 1882 | $50,721 61 |
| On account of road | 448 88 |
| Warrants issued for quarter ending Sept. 30, 1882. | |
| Here follows statement of 17 | |
| Warrants issued for different purposes, aggregating | 12,826 95 |
| | $63,997 44 |
| Principal D. N. & Summit Toll-Road bonds | 6,000 00 |
| Total wt. and bonded indebtedness Oct. 1, 1882 | $69,997 44 |

"State of Colorado, County of Rio Grande—ss.: We, the undersigned, do hereby certify that the above and foregoing is a true and correct statement of the expenditures of Rio Grande county for the quarter ending Sept. 30, 1882, as appears from the books in the clerk's office of said county this 17th day of October, 1882. ———— ————, Chairman Bd. Commissioners. "J. W. Ross, County Clerk."

The other reports put in evidence are in the same form, except the certificate, which, in some instances, reads:

"I, James W. Ross, county clerk, hereby certify that the foregoing is a true and correct statement of the expenditures of said county for the quarter ending [giving date], and of the financial condition of the same on said date. "James W. Ross, County Clerk."

And in others is as follows:

"I, James W. Ross, county clerk, hereby certify that the foregoing is a true and correct statement of the expenditures of said county for the quarter ending June 30th, 1883, as appears from the books in my office this 30th day of June, 1883. James W. Ross, County Clerk."

These reports do not purport to be the semiannual statements required by the statute above recited. They are headed "Quarterly Statements." They are not signed by or certified to by the board of commissioners of the county. They do not contain a detailed statement of the receipts and expenditures, nor do they strike a balance showing the condition of the county treasury. It does not appear that they were published or posted as the semiannual statements authorized by the statute, and, as they do not contain the facts required by the statute, and do not purport to represent any action taken by the board of commissioners of the county, they cannot be received as statements authorized to be made by section 150 of the General Statutes of 1883. Neither are they admissible under the rule that admits in evidence "official registers or records kept by persons in public office in which they are required, either by statute or by the nature of their office, to write down particular transactions occurring in the course of their public duties, or under their personal observation." 1 Greenl. Ev. § 483; Evanston v. Gunn, 99 U. S. 660; White v. U. S., 164 U. S. 100, 17 Sup. Ct. 38; In re Hirsch, 74 Fed. 928.

The portion of these reports which the court relied on as proof conclusive of the amount of indebtedness owing by the county is the recital therein that at a given date the outstanding warrants of the county amounted to a named sum. This statement is merely a conclusion drawn by the clerk from whatever books or papers he may have examined in reaching the result stated. It is entirely clear that it would not have been permissible to defendant to have called as a witness the clerk of the county, and to have asked him what he found, upon examination of the county records, was the indebtedness of the county in the years 1882, 1883, and so on, because such evidence would be hearsay, and would be substituting the judgment of the witness for that of the jury upon one of the material matters in issue in the case. If the records of the county contain any competent evidence tending to show the amount of the indebtedness of the county at any particular date, the records would be the primary evidence, and these should be introduced, instead of a bare recital, such as is found in the reports in question. It will be noticed that these reports do not state that they are copies of any records, or of any entries upon the records, of the county, but only state that on a given date the amount of the outstanding warrants was a named sum; and in none of the certificates signed by James W. Ross, as clerk, is it certified that the amount named is correct. But, even if the certificates did so certify, we are not aware of any rule of evidence which would justify the reception of such statements in evidence, when it clearly appears that the same are but conclusions of the clerk, drawn, possibly, from his examination of the records in his charge; although that is not made clear. As already stated, the court, in the charge to the jury, relied solely upon the recitals found in the quarterly report for June 30, 1882, as the evidence justifying the final instruction to the jury to find for the defendant; and, as we hold that the recitals in these reports of the amount of outstanding warrants were not competent evidence, it follows that it was error to admit them in evidence, and, eliminating them

from consideration, there was no foundation to sustain the action of the court in directing a verdict for the defendant.

In support of the defense relied upon, it was also incumbent on the defendant to prove the date of the creation of the indebtedness, evidenced by the several warrants sued on, as that was a necessary step in ascertaining whether the indebtedness, when created, exceeded the constitutional limit; and in support of its contention in this respect the defendant offered in evidence a large number of bills or accounts in favor of various parties and against the county, which were tabulated in Exhibits 3 and 4, to which objection was made that there was no competent evidence showing the time of the creation of the claims represented by these accounts, and thereupon the court ruled that, where the account showed the date when the services were rendered, it would be received as showing the date of the creation of the indebtedness; that where the date of the rendition of the service was not stated on the bill, but the account was dated, that would be accepted as the date of the accruing of the indebtedness; and that where the account was not dated, and failed to state the date of the rendition of the service, the date of the warrant issued therefor would be taken as the date of the accruing of the indebtedness. In this ruling the trial court was clearly in error. There is no presumption of law that an indebtedness for which a county warrant is issued did not exist at a date prior to that of the warrant, and, as a matter of fact, it is well known that, as a rule, warrants are issued as evidence of a pre-existing indebtedness; and therefore the court was not justified in assuming that the indebtedness was created at the date of the warrant, simply because the defendant was unable to show when the debt was created. Board v. Standley (Colo. Sup.) 49 Pac. 29; People v. Board of Com'rs (Colo. App.) 52 Pac. 748; Wilder v. Board of Co. Com'rs, 41 Fed. 572.

So, also, it was error to accept the mere date of an account as evidence of the creation of the indebtedness represented by the items thereof, for it is apparent that in such cases the date is intended to show the time of the rendition of the account, and not the time of the rendition of the services. In the cases wherein the accounts or bills set forth the dates of the rendition of the services, the utmost that could be claimed therefor would be that such statements could be considered in connection with any other facts tending to show when the services were rendered, it being for the jury to determine from the entire evidence whether the date of the rendition of the services was proven or not; and clearly, therefore, the court erred in ruling that, where the items of the account were dated, such dates would be taken as conclusive, which was the effect of its ruling on this point.

Error is also assigned upon the action of the court in admitting in evidence what is termed in the record "Defendant's Exhibit No. 1," which is a duly-certified copy of a tabulated statement of the expenses incurred at the November election in 1883, and which shows the fees earned by the judges, clerks, and canvassers in the several election precincts of the county, and which exhibit was offered for the purpose of proving that George W. Stoner had earned a fee of $2.50 as clerk in precinct No. 5, for which it was claimed warrant No. 3,632 had

been issued,—that being one of the warrants declared on by the plaintiff company, and the evidence being offered to show when the debt accrued for which the warrant was issued. With reference to this class of evidence the rule is that entries made in due course of business in the records of a county, either under the express provisions of a statute or in the usual course of official duty, may be introduced in evidence, when pertinent to an issue in dispute, either by the production of the original record or by a duly-certified copy. Underh. Ev. § 142c; 1 Greenl. Ev. § 483. It is suggested that this general rule ought not to be held applicable in cases to which the county is a party, and wherein the county seeks to make evidence, in its own behalf, out of entries upon its own records. In this case the entries, when made, were against the interest of the county, being admissions of indebtedness against it, and were made at a time which precludes the assumption that they were made for the purpose of manufacturing evidence to be used in defeating the claims sued on in this case; and we do not see any good reason why the entries are not competent on behalf of the county, if they would be competent on behalf of any resident thereof.

In 1 Greenl. Ev. § 483, in commenting on the question, it is said:

"The extraordinary degree of confidence, it has been remarked, which is reposed in such documents, is founded principally upon the circumstance that they have been made by authorized and accredited agents appointed for the purpose: but partly also on the publicity of their subject-matter. Where the particular facts are inquired into and recorded for the benefit of the public, those who are empowered to act in making such investigations and memorials are in fact the agents of all the individuals who compose the state; and every member of the community may be supposed to be privy to the investigation. On the ground, therefore, of the credit due to agents so empowered, and of the public nature of the facts themselves, such documents are entitled to an extraordinary degree of confidence, and it is not necessary that they should be confirmed and sanctioned by the ordinary tests of truth."

In Underh. Ev. § 142c, in discussing the admissibility of entries constituting portions of the public records, it is said:

"The general notoriety of the matters to which such entries relate, the public and official character of the books and of those who keep them, the fact that the entries are made by an officer who is under oath, that they are required or authorized to be made by law, or else are made in the usual course of official duty, without any present motive to misrepresent, combine to give the evidence obtained from such sources peculiar force and value. To give an official character to a public record or register it is not essential that it should have been authorized or ordered to be kept by statute. It is the duty, if not the right, of every official to keep a record of his public transactions whenever such a practice is a common and appropriate mode of evidencing them. This record, whether required to be kept by statute or not, is a public record."

In Owings v. Speed, 5 Wheat. 420, the supreme court, Mr. Chief Justice Marshall speaking for the court, said:

"There was also an exception taken to the opinion of the court in allowing the book of the board of trustees [of Bardstown, Ky.], in which their proceedings were recorded, and other records belonging to the corporation, to be given in evidence. The book was proved by the present clerk, who also proved the handwriting of the first clerk and of the president, who were dead. The trustees were established by the legislature for public purposes. The books of such a body are the best evidence of their acts, and ought to be admitted whenever those acts are to be proved."

In Dill. Mun. Corp. § 304, the rule is stated to be that:

"A public or municipal corporation, required by law to keep a record of its public or official proceedings, may itself use such records as evidence in suits to which it is a party; but the records must first be properly authenticated."

It will be borne in mind that this Exhibit 1 was not offered in evidence to establish the existence of a disputed claim against the county, or to show that a particular claim had been allowed by the county authorities, but it was offered by the defendant as evidence tending to show the date of the creation of the indebtedness represented by warrant No. 3,632, being one of the warrants sued on by the plaintiff company. In the petition the form of the warrants sued on is set forth, and it thus appears that each warrant on its face recites the number of the bill for which it was issued, and in the tenth paragraph of the petition it is averred:

"That prior to the 27th day of January, 1887, the said board of county commissioners audited and allowed the claims of various persons against said county, and thereupon warrants were issued in said form by said board in number and amount and to the persons as hereinafter set forth in Exhibit A, hereunto attached, and made part hereof, and for the purposes and services mentioned in said Exhibit A."

This exhibit thus attached to and made part of the petition is a tabulated statement of the warrants sued on, in the following form:

| No. | Date. | To Whom. | For What. | Registered. | Amt. |
|-----|-------|----------|-----------|-------------|------|
| 3632 | Jan. 8, '84 | Geo. W. Stoner. | Election. | Nov. 10, 1885. | $2.50 |

If this exhibit had given the date of the election at which the services were rendered for which warrant No. 3,632 was issued to George W. Stoner, it would not have been necessary for the defendant to introduce evidence on that point; but, as the date was not given, it became necessary to prove the same, and it was to that end that Exhibit 1 was offered and received in evidence. This warrant, No. 3,632, upon its face showed that it had been issued for a bill bearing the number 2,563, and therefore pointed to that bill as the proper source of information for determining the consideration for which the warrant was issued, and thereupon the defendant offered a properly certified copy of the bill, it being the Exhibit 1 to which exception was taken by the plaintiff company. It will be noticed that in the petition it was averred, in substance, that the board of commissioners of the defendant county had properly allowed the claim of George W. Stoner in the sum of $2.50 for election services rendered to the county, and for such claim had issued to him warrant No. 3,632, and upon the introduction of this warrant in evidence it appeared on its face that the bill for which it was issued was numbered 2,563, and this bill, thus numbered, was then offered as evidence upon the point of the date of the services for which the warrant was issued. As we understand it, it is the custom, in keeping the records of the county, to number each bill that is presented to and allowed by the commissioners, and, when warrants are made out, they refer to the number of the bill for which they are

issued, and thus a convenient record is made for connecting the warrants with the claims for which they are issued. The mere fact that Exhibit 1 is in the form of a tabulated statement made by the county clerk of the expenses incurred at the election of November, 1883, is immaterial, because it appears that the statement in this form became bill No. 2,563, in part payment of which warrant No. 3,632 was issued; and in plaintiff's petition, as already stated, it is averred that the claims for which the warrants sued on were issued were all audited and allowed by the county board of commissioners. In other words, the plaintiff company, by the averments in the petition and the evidence offered by it, admitted that warrant No. 3,632 was issued January 8, 1884, to George W. Stoner, for election services rendered the county, the bill for which the warrant was issued being numbered 2,563. Under these circumstances we hold it was open to the defendant county to introduce bill No. 2,563 in evidence for the purpose of throwing light upon the question of the date of the services for which warrant No. 3,632 was issued. Unless evidence of this character can be admitted, it would be practically impossible for the county to connect the warrants sued on with the services for which they were issued, after the lapse of so many years; and as these bills form part of the records of the county, and were made under circumstances which preclude the idea that they were made in the interest of the county as self-serving declarations, we hold that the same were admissible upon the issue involved.

A number of exceptions were taken to the testimony of John W. Crump, a witness on behalf of the defendant county, who had prepared tabulated statements from the records and books of the county, and which were admitted in evidence. It is clearly apparent that on the trial of a case of this character before a jury, which involved the ascertainment of the amount of the indebtedness of the county on many different dates through a period of a number of years, and also required proof of the dates of the creation of the debts represented by the warrants sued on, it would be absolutely impossible for the jury to retain in their memories the dates and amounts of the numberless items put in evidence, and it would be difficult for them to take memoranda thereof; and yet, without such an aid to their memories, it would be impossible for them to reach an intelligent verdict. In such cases it is admissible to pursue the method adopted by the trial court; that is, to have the books, papers, and other items of original evidence offered and received, and, in connection therewith, to admit the testimony of a competent person, who has prepared a tabulated statement in writing, summarizing the numerous items offered in evidence. The original sources of information being in evidence, the correctness of the tabulated statement can be readily verified by an examination of the witness, and a comparison with the sources from which the statement has been compiled, and, being thus verified, it becomes a valuable aid to the jury. Where, however, statements of this kind are offered in connection with the testimony of the person who has tabulated the same, care must be taken to confine the same to matters included within the primary evidence properly introduced, for this method of summarizing, for convenience sake, numerous items, giving the date and

amounts, cannot be made a means of putting before the jury the conclusions of the witness drawn from sources of information which are not in evidence. For the reasons stated, we hold it was error to direct a verdict for the defendant, and the judgment must therefore be reversed, and the case be remanded to the circuit court, with instructions to grant a new trial.