BOARD OF COM'RS OF LAKE COUNTY v. KEENE FIVE-CENTS SAV. BANK.

(Circuit Court of Appeals, Eighth Circuit.   April 3, 1901.)

No. 1,441.

1. HEARSAY AND SELF-SERVING STATEMENTS—RULE MUST BE ENFORCED WITH JEALOUS CARE.

The rule forbidding the admission of self-serving statements and hearsay testimony as evidence is vital to the protection of the rights of person and property, and must be guarded against encroachment with jealous care.

2. SELF-SERVING STATEMENTS AND HEARSAY DEPOSITED IN A PUBLIC OFFICE INCOMPETENT EVIDENCE.

The self-serving statements of a county or municipality, made by its officers or agents, and written statements of third parties deposited or filed in its offices, are incompetent evidence to prove the facts they relate, in an issue between it and a private party, in the absence of statutory provisions which qualify them. The same rules of evidence govern the trial of an issue between a private party and a municipal corporation which control the trial of a like issue between individuals.

3. SECTION 922, MILLS' ANN. ST. COLO., RELATIVE TO COPIES OF PAPERS IN PUBLIC OFFICES, CONSTRUED.

Section 922, Mills' Ann. St. Colo., which provides that copies of writings duly filed or deposited in county offices shall be prima facie evidence in all cases, makes such copies prima facie evidence of the contents of the original writings, but it does no more. It does not qualify the copies for admission in evidence in any case in which the originals were not qualified.

4. COPIES OF CERTAIN WRITINGS FOUND IN COUNTY CLERK'S OFFICE INCOMPETENT EVIDENCE IN ACTION BY THIRD PARTY AGAINST THE COUNTY.

Copies of county warrants and of lists thereof on the letter heads of Chase & Taylor, aggregating $65,384.72, found in 1898 in the office of a county clerk of a county which in 1882 exchanged with Chase & Taylor funding bonds aggregating $75.000 for its warrants, are incompetent evidence that any of these warrants were exchanged for any of 15 bonds, of $1,000 each, originally issued to Chase & Taylor, in an action thereon by a subsequent bona fide holder.

5. COUNTY CLERK'S ACCOUNT BOOK INCOMPETENT TO PROVE TRUTH OF ITS STATEMENTS IN AN ACTION BETWEEN THE COUNTY AND A THIRD PARTY.

A county clerk's account book, which was not kept in compliance with any statute, but which contained summary statements at the end of each six months of the state of 15 county funds, and of the aggregate amounts of county warrants drawn, canceled, and outstanding, is incompetent evidence of the truth of these statements, in an action between the county and a third party, because it is a self-serving statement of conclusions drawn from original records and writings not produced.

6. FUNDING BONDS NOT VOID BECAUSE FUNDED EXCEEDS CONSTITUTIONAL LIMITATION, AS THEY CREATE NO DEBT.

Funding bonds neither create nor increase a debt, but simply change its form; hence they are not void because the debt funded exceeds the constitutional limitation.[1]

7. BONDS FUNDING EXCESSIVE DEBT PRESUMPTIVELY VALID IF ANY PART OF THE DEBT FUNDED MIGHT HAVE BEEN SO.

Each county bond is a separate promise, and the basis of a separate cause of action against a county. Where the facts and conditions might have been such under the law that any part of the excessive debt funded might have been valid, the legal presumption is, in an action on the bond, that these facts and conditions existed, and that the bond in action was

---

[1] Constitutional and statutory limitation of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.

issued to fund a valid portion of the debt, because the presumption is that the county officers faithfully discharged their duties, and issued the bond only after ascertaining the validity of the debt for which it was exchanged.

8. COUNTY WARRANTS PRIMA FACIE VALID.
County warrants are prima facie evidence of legal obligations of the county.

9. LAKE COUNTY, COLO., FUNDING BONDS OF 1882 PRESUMPTIVELY VALID.
While the Lake county refunding bonds of 1882, aggregating $500,000, evidenced a debt in excess of the constitutional limitation, they are presumptively valid, because that county might in 1882 have issued any one of them in exchange for valid outstanding warrants for debts incurred prior to September 1, 1879, when the limitation first took effect, or for debts incurred after that date in each year for current expenses for which a levy of taxes was made; and in an action on any one of these bonds the presumption is that it was issued to fund such a lawful debt.

10. BURDEN OF PROOF TO SHOW INVALIDITY OF THESE BONDS IS ON COUNTY.
The burden of proof on the issue of the validity of the bonds under the constitutional limitation is upon the county, because each bond and the warrants for which it was exchanged are prima facie evidence of the validity of the debt they represent; and these presumptions must prevail unless the county proves by a fair preponderance of competent evidence that the debt for which the bond was given was unauthorized and void.

11. UNNECESSARY AVERMENTS REQUIRE NO PROOF.
Unnecessary averments in a pleading, which are not essential to the statement therein made of the cause of action, require no proof, are mere surplusage, and do not affect the issues.

12. ERROR WITHOUT PREJUDICE NO GROUND FOR REVERSAL.
Alleged errors which the record conclusively shows could not have affected the decision and judgment work no prejudice and constitute no ground for reversal.

13. RULING ON MOTION FOR NEW TRIAL FOR NEWLY-DISCOVERED EVIDENCE NOT REVIEWABLE.
The ruling of the trial court upon a motion for a new trial on the ground of newly-discovered evidence rests in the discretion of the court, and, in the absence of gross abuse of that discretion, does not constitute an error of law, and cannot be reviewed in a national appellate court.

Caldwell, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

This was an action brought by the Keene Five-Cents Savings Bank, the defendant in error, against the board of county commissioners of the county of Lake, the plaintiff in error, to recover upon coupons cut from 15 funding bonds, of $1,000 each, which were issued on January 2, 1882, in compliance with an act of the general assembly of the state of Colorado entitled "An act to enable the several counties of the state to fund their floating indebtedness," which was approved February 21, 1881. 1 Mills' Ann. St. §§ 939-944. The bonds disclosed upon their face the fact that they were a part of an issue of funding bonds which aggregated $500,000, and they were payable to Chase & Taylor or bearer. They contained no recital that the amount of this issue was within the constitutional limitation of indebtedness prescribed by the people of Colorado, but simply recited that they were issued under and by virtue of, and in full compliance with, the act of the general assembly, and that they had been authorized by a vote of the majority of the duly-qualified electors of the county who voted upon the question. Out of this issue of bonds, aggregating $500,000, bonds to the amount of $75,000 had been issued to Chase & Taylor, and the 15 bonds from which the coupons in this suit were cut were a part of this issue of $75,000. The defense to the bonds was that they were issued in exchange for county warrants which evidenced debts that were incurred

after the limitation of indebtedness prescribed by the constitution of Colorado had been exceeded by the county. Section 6, art. 11, of the constitution of the state of Colorado, which prescribed the limitation of indebtedness, contained a proviso to the effect that this limitation should not apply to counties having a valuation of less than $1,000,000. The assessed valuation of the taxable property in the county of Lake did not reach the sum of $1,000,000 until the 1st day of September, 1879, and there was no time subsequent to that date when this valuation was sufficient in amount to warrant the creation of an indebtedness of $500,000. The funding bonds aggregating $500,000, issued January 2, 1882, were exchanged for county warrants, some of which evidenced indebtedness of the county created before, and some of which represented indebtedness of the county created after, September 1, 1879. The foregoing facts are conceded by counsel for both parties in the argument of the questions presented in this case, and for that reason the method by which they were established is immaterial, and will not be considered. After the defendant in error had introduced in evidence its coupons, and the bonds from which they were taken, and had rested its case, the plaintiff in error attempted to prove that the 15 bonds in question were issued in exchange for county warrants which evidenced obligations of the county which had been created subsequent to the time when its debt exceeded the constitutional limitation, and which were for that reason invalid. For the purpose of showing what warrants were exchanged for the bonds in issue, the county offered three lists or statements which were found in the office of the county clerk of Lake county, wrapped around county warrants there deposited, which corresponded, respectively, in numbers, amounts, dates, and dates of registration, with the lists contained in those statements. These statements were in the following form:

"Office of Chase & Taylor, Sioux City, Iowa.

"All Kinds of Municipal Securities Bought and Sold.

"....................Warrants.

"Sioux City, Iowa.

| No. | Amount. | Date. | Date of Registration. | Acc. | Int. | Total. | Rate. | Am't Paid. |
|---|---|---|---|---|---|---|---|---|
| 3,177 | 420 | June 8, '80. | June 14, '80. | 65" | | | | |

There were many entries on each statement, differing only in the figures representing number, date, and amount. One of these statements had on its back, "No. 1, R. J. Chase, $15,649.24," and also the words, "Registered backed." The figures in the column headed "Amount" in that statement aggregated $15,649.24. The second statement was backed, "No. 2, Chase & Taylor, $34,429.98," and the word "Registered" was also written thereon. The third statement was backed, "D. K. Tenney, $15,305.50," and the words, "Registered backed," were written upon it. To each statement a certificate in substantially the following form was attached:

"State of Colorado, County of Lake—ss.:

"I, H. S. Phillips, clerk and recorder and county clerk of Lake county, do hereby certify that the annexed and foregoing is a true and correct copy of the warrant list and funding bond statement of [R. J. Chase, Chase & Taylor, or D. K. Tenney, as the case was], as the same appears on file in my office, and in my custody as county clerk and recorder of Lake county, Colorado. Witness my hand and official seal this 26th day of November, A. D. 1898.

"[Seal of County.]                              H. S. Phillips, County Clerk."

The county clerk who made these certificates testified that he had no knowledge of the original transactions, but that when he entered upon the duties of his office he found the originals of these three statements wrapped up with county warrants which corresponded in number, date, and amount with the figures under the respective columns in the statements; and the warrants so found by him were offered in evidence with the statements. The statements and warrants thus offered were excluded by the court on the ground that they did not constitute competent evidence that any of these warrants were exchanged for the bonds in suit. No other evidence was offered in the case

to identify the warrants which were exchanged for these bonds, and at the conclusion of the trial the court instructed the jury to return a verdict in favor of the defendant in error.

H. B. Johnson (Charles Cavender and W. H. Bryant, on the brief), for plaintiff in error.

Edmund F. Richardson (Thomas M. Patterson and Horace N. Hawkins, on the brief), for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The issue concerning the trial of which the chief complaint is made in this case was whether or not certain county warrants found in the office of the county clerk of the plaintiff in error about the year 1898 were exchanged in 1882 for any of the 15 funding bonds upon which this action was founded. This was a very simple issue of fact. To establish its claim that some of these county warrants were exchanged for some of these bonds, the county offered in evidence certified copies of three lists of warrants written on the letter heads of Chase & Taylor, aggregating, respectively, $15,649.24, $34,429.98, and $15,-305.50, together with three bundles of county warrants corresponding in dates and amounts with these lists. These warrants were found in the office of the county clerk of the county of Lake, with these lists wrapped around them, when the present clerk entered upon the discharge of the duties of his office. Neither of these lists bore any signature or date, and no witness came to testify when, why, or by whom they were made. It is earnestly contended that the rulings of the court below that this evidence was incompetent to prove the fact that any of these warrants were exchanged for any of the bonds in issue was a fatal error. But the established rules of evidence which control the trial of an issue of fact between adverse litigants are not suspended or abrogated when one of the parties to the action is a county or a municipality. Hearsay and self-serving declarations are as pernicious and incompetent to establish a claim or a defense of a county as they are to prove a cause of action or a defense of an individual. If the issue of the exchange of these warrants for these bonds had been on trial between private parties, the defendant certainly could not have established the exchange by proof either that he had himself said or written, or that Chase & Taylor or any other person had said or written, that such an exchange had been made. The former statement would have been a mere self-serving declaration, and the latter the baldest hearsay. The plaintiff would have been entitled upon such an issue to the testimony, under oath, of the witnesses who knew the facts, and to an opportunity to cross-examine them, and in the absence of such evidence the defendant would surely have failed. These rules are equally applicable to the trial of such an issue between a private individual and a county, in the absence of any modification or abrogation thereof by act of congress or of the legislature. The officers of a county are its agents. Their acts and statements in the discharge of their official duties are the acts and

statements of the county, and not those of its adversaries. Upon a simple issue of fact like that in hand, such acts and statements may sometimes be used in evidence against the county as its admissions against interest; but, when offered by the quasi municipality, they are as much self-serving declarations and as incompetent as the prior oral or written statements of an individual in support of his claim or defense, unless they are made competent by some express statute, or unless they fall under the recognized exception applicable to "official registers or books kept by persons in public office, in which they are required by statute or by the nature of their office to write down particular transactions occurring in the course of their public duties and under their personal observation." 1 Greenl. Ev. § 483; Evanston v. Gunn, 99 U. S. 660, 25 L. Ed. 306; White v. U. S., 164 U. S. 100, 17 Sup. Ct. 38, 41 L. Ed. 365; In re Hirsch (C. C.) 74 Fed. 928. There was no evidence that any of these lists of warrants, or that any of the writing thereon, was made by any officer or agent of the county; and, if there had been, the lists would still have been incompetent, because no such statements were required to be made by any such officer, either by the statutes of the state, or by the nature of his office. The statute under which the bonds were issued provided that, before the vote to issue them was taken, the county commissioners might publish a notice requesting the holders of warrants to submit in writing "a statement of the amount of warrants of such county which they will exchange for the bonds of such county, to be issued under the provisions of this act, and the rate at which they will exchange such warrants for such bonds, taking such bonds at par." Mills' Ann. St. § 939. But these lists are not statements made pursuant to this statute, because they contain no offer to exchange warrants for bonds, and they specify no rate of exchange. Moreover, if they were such statements, they would not constitute any evidence that the proposed exchange was ever made. Nor are they admissible as a part of the res gestæ at the time of the exchange; for they bear no date, and there is no evidence or presumption that they were made or deposited at the time when the bonds were issued. So far as the evidence in this record discloses the fact, they may have been deposited in the clerk's office years after the warrants about which they were wrapped were canceled or exchanged, and a ruling that such fugitive, undated, and unidentified writings as these may constitute evidence upon which the rights of litigants must depend would open a plain and easy road to the establishment of all the claims and defenses of municipalities. The mere deposit in a public office at any time before the trial of the statement of the claim or defense of the municipality, without date or signature, and without identification or proof of origin, would be ample to sustain it. These lists cannot be received as a part of the things done at the time of the exchange, because there is no evidence when they were made or when they were deposited in the office of the county clerk. Nor were they admissible as declarations of Chase & Taylor, and that for three reasons: They were not signed, and there was no evidence that they were made by Chase & Taylor; they do not state or attempt to state that any of the warrants aggregating $65,-384.72 which are listed therein were ever exchanged for the 15 bonds

aggregating $15,000 which are here in question; and if they had been signed by Chase & Taylor, and if they had contained such a story, they would still have been incompetent as evidence against the defendant in error, because they would have been nothing but hearsay. The county stipulated in the trial of this action that the bank was a bona fide purchaser of its bonds before maturity, without any notice of their invalidity, except such constructive notice as the constitution and laws of the state imposed upon it. Neither the constitution nor the laws gave the bank any notice that its bonds were issued in exchange for any invalid warrants or for any particular warrants. It is conceded in the argument of this case that when these bonds were issued there were valid warrants of the county outstanding for which some of them might have been exchanged. A state of facts might, therefore, have existed under which the bonds might have been valid; and, if conditions and circumstances might have existed under which they would have been lawful under the law, the presumption was that they were so. City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; Rollins & Sons v. Board of Com'rs of Gunnison Co., 80 Fed. 692, 699, 26 C. C. A. 91, 98, 49 U. S. App. 399, 412; National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 62 Fed. 778, 10 C. C. A. 637, 27 U. S. App. 244; Chaffee Co. v. Potter, 142 U. S. 355, 363, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040. The bank purchased the bonds in reliance upon this presumption. Each bond constitutes a separate and independent cause of action against the county, and the presumption of its validity goes with it to the end, and must prevail unless it is overcome by a fair preponderance of competent evidence that the warrants for which that particular bond was exchanged evidenced unauthorized obligations. Nesbit v. Riverside Independent Dist., 144 U. S. 610, 619, 12 Sup. Ct. 746, 36 L. Ed. 562; Board v. Sutliff, 97 Fed. 270, 275, 38 C. C. A. 167, 171; Board v. Standley, 24 Colo. 1, 14, 49 Pac. 23, and cases there cited. Moreover, the owner of each bond has the right to insist that the alleged defense of this county shall not be inferred from incompetent circumstances or established by hearsay. The settled rules of evidence which govern the trial of actions measure the extent and secure the protection of the rights of persons and property. Reversals, modifications, or variations of these rules produce instability and uncertainty in these rights, and breed distrust of courts and of governments. No rule is more salutary, no principle is more vital to the security of the life, liberty, and property of the citizen, than that rule which prohibits the repetition of the narratives of strangers, whether verbal or written, to determine issues between litigants, and prescribes that only after due notice, and opportunity for cross-examination of the very parties whose statements are offered, and then only under the solemnity of an oath or affirmation, shall their stories be evidence. Strike down this rule, and the most sacred rights of person and property rest only upon the whimsical and pernicious gossip of the reckless, the irresponsible, and the vicious. The rule that hearsay is incompetent evidence is essential to the preservation of personal liberty and the rights of property. It should be guarded against encroachment with jealous care. Its enforcement is not dis-

cretionary with the courts, and its violation is fatal error. Association v. Shryock, 73 Fed. 774, 777, 20 C. C. A. 3, 7, 36 U. S. App. 658, 665; Edwards v. Bates Co., 99 Fed. 905, 906, 40 C. C. A. 161, 162; Queen v. Hepburn, 7 Cranch, 290, 295, 3 L. Ed. 348; Waldele v. Railroad Co., 95 N. Y. 274, 47 Am. Rep. 41; Tilson v. Terwilliger, 56 N. Y. 273; People v. Davis, 56 N. Y. 95; Reg. v. Bedingfield, 14 Cox, Cr. Cas. 341; Meek v. Perry, 36 Miss. 190, 260; Merkle v. Bennington Tp., 58 Mich. 156, 24 N. W. 776; Patterson v. Railway Co., 54 Mich. 91, 19 N. W. 761; Lund v. Inhabitants of Tyngsborough, 9 Cush. 36; Martin v. Railroad Co., 103 N. Y. 626, 9 N. E. 505; Association v. McCluskey (Colo. App.) 29 Pac. 383, 384; Railway Co. v. McLelland, 62 Fed. 116, 10 C. C. A. 300, 27 U. S. App. 71.

Now, these lists of warrants were not signed by Chase & Taylor or by the county clerk, and they did not state that any of the warrants there described had been exchanged for any of the bonds in suit; and for these reasons, as we have shown, they were not competent evidence. But if they had contained such a statement, and if they had been signed by Chase & Taylor and by the county clerk, how would those facts have made them evidence against this bank? They would still have been res inter alios acta and mere hearsay as against an innocent purchaser of these bonds. They would still have been made by Chase & Taylor and the clerk when they were not witnesses, without notice to the defendant in error, without opportunity for cross-examination, and without the indispensable qualification of an oath. This was an action by the bank, an innocent purchaser of these bonds, against their maker, the county. Chase & Taylor and the clerk of that county were strangers to the bank, and their statements of their transactions were no evidence against it of the truth of the stories they told. The bank had the right to their testimony under oath, and to an opportunity to cross-examine them, before their narratives became evidence against it. The lists of warrants and the warrants they inclosed were therefore incompetent as evidence in this case, under general and well-settled rules of law.

It is insisted, however, that the following statutes of the state of Colorado qualified these lists and warrants for introduction in evidence:

"Copies of all documents, writs, proceedings, instruments, papers and writings duly filed or deposited in the office of any county judge, county clerk, or county treasurer, and transcripts from books of record or proceedings kept by any of said officers, with the seal of his office affixed, shall be prima facie evidence in all cases." Act March 24, 1877 (1 Mills' Ann. St. p. 788, § 922). "A copy of any record, or document, or paper, in the custody of a public officer of this state, or of the United States, within this state, certified under the official seal, or verified by the oath of such officer to be a true, full and correct copy of the original in his custody, may be read in evidence in an action or proceeding in the courts of this state, in the like manner, and with the like effect, as the original could be if produced." Civ. Code 1877, § 416; Mills' Ann. Code, § 422.

The claim of counsel for the county is based upon the statute first quoted. It is not that this statute had the effect to make any document or writing competent, relevant, or material evidence of the facts stated therein, but that it had the effect to make a certified copy of

any writing duly filed or deposited in any of the county offices therein named prima facie evidence that the original was what it purports to be, or that the statute qualifies the paper for introduction in evidence without other proof of identification. If this contention could be sustained, it would not render the rejection of the lists of warrants by the court below error, because, conceding that they were what they purport to be, they do not purport to be statements of Chase & Taylor, or of any other particular person or persons; they do not purport to state that any of the warrants listed were exchanged for any of the bonds from which the coupons in suit were cut; and if they did purport to contain such a statement, and to be made by Chase & Taylor or any other person, they would still be the mere narratives of strangers, and thus hearsay testimony, and incompetent evidence against the bank, for the reasons already stated. But the claim of counsel for the county concerning the construction of this statute cannot be sustained. The plain purpose and effect of the section under consideration was to make copies of the writings there specified prima facie evidence of the contents of the original writings,—to do nothing more and nothing less. The object of the statute certainly was not to make mere copies competent, relevant, or material evidence of facts of which the original writings were not evidence; and, in one portion of their argument, counsel for the county concedes this proposition. Now, if the statute identified and qualified the copy for admission in evidence when the original was not so identified and qualified, it would have the effect to make the copy evidence of the facts therein stated in many cases when the original was not competent to prove those facts. Neither the words of the statute, the evil it sought to remedy, nor its purpose requires a construction so unreasonable; and our conclusion is that this section did not, by identification or otherwise, qualify the copy of any writing for admission in evidence when its original was not so qualified. The result is that the lists of the warrants and the warrants themselves were not competent evidence that any of the warrants were exchanged for any of the bonds in action, and the ruling of the court below was right.

It is assigned as error that the court rejected the county clerk's account book, which was practically considered and rejected in Dudley v. Board, 80 Fed. 672, 26 C. C. A. 82, 49 U. S. App. 336, and Board v. Sutliff, 97 Fed. 270, 38 C. C. A. 167. This book was not a record of daily transactions. There is no statute of Colorado which required it to be kept. It was a mere statement of conclusions which the clerk at the end of each six months drew from an examination of other records and writings, and wrote down in this book. It consisted of summary statements of accounts with 15 different funds, in this general form:

Lake County in Account with County Treasurer, Expenditures Acct.
Road Fund.

1880.

Jan'y 1. Total expenditure on county roads in repairing, making,
and bridging .......................................... $4,101 84
Interest paid on warrants .............................. 69 28

$4,171 12

1880.

Jan'y 1.  By amt. of road warrants can...................... $2,320 59
          By outstanding indebtedness of Lake county in road war-
             rants, January 1, A. D. 1880.  To balance............. 1,850 53
                                                                    —————————
                                                                    $4,171 12

In addition to these statements of balances, it contained a summary statement of the aggregate amount of warrants outstanding at the end of each six months.   It was offered in evidence to prove the amounts of outstanding warrants and the amounts of the debts of the county at the various times when these semiannual statements were written down in it.   There was a general statute in effect in Colorado which required a public record of the indebtedness of this county to be made in a certain way by the county commissioners, and to be published at certain times.   But this account book does not comply with that statute, and the county never did comply with it in any way. Dudley v. Board, 80 Fed. 672, 677, 26 C. C. A. 82, 87, 49 U. S. App. 336, 345; Board v. Sutliff, 97 Fed. 270, 279–281, 38 C. C. A. 167, 175– 177.   It is evident from an inspection of this book that the written statements of the amounts outstanding and of the balances of the various funds at the respective times when they purport to have been written in this book were mere conclusions which the clerk or clerks who made them drew from an examination of other writings.   If the writers of this book had been placed upon the stand as witnesses, and had been asked what they found to be the amount of these outstanding warrants and the balances of these accounts from an examination of the files and records, their testimony would not have been competent, without an introduction of the writings from which they drew their conclusions.   Much less is their written statement of these conclusions, without oath and without opportunity for cross-examination. As against the defendant in error such statements of such clerks are nothing but hearsay.   The fact must not be forgotten or overlooked in the consideration of all the questions of evidence in this case that this bank was no party to the acts, records, or writings of this county, or of its officers and agents.   To all these it is a stranger.   This was an action by this stranger, the bank, against the county.   The latter alleged that its indebtedness exceeded its constitutional limit at various times.   It undertook to prove this averment.   In the absence of any modifying statute, the same rules of evidence obtain in the trial of that issue between these corporations that would have governed the trial of the same issue between individuals.   The prior statements of its indebtedness by the county and its officers and agents, made for its own convenience, not in compliance with any requirement of the statute or the law, were no better evidence against the bank than the prior statements of any individual would be against his adversary in a lawsuit.   They could not rise higher than self-serving statements, and the writings in this account book did not rise to that dignity, even, because they were not required to be made by the county clerk by any statute of the state, or by the nature of his office. They were therefore the mere unsworn statements of the man or men who made them, and were incompetent, both because they were hearsay, and because the writer or writers, if sworn as witnesses, could

108 F.—33

not have testified to the bald conclusions they wrote, without a production of the original writings from which they drew them. Rollins & Sons v. Board of Com'rs of Rio Grande Co., 90 Fed. 575, 579, 33 C. C. A. 181, 185, 62 U. S. App. 255, 262; Dudley v. Board, 80 Fed. 672, 677, 26 C. C. A. 82, 87, 49 U. S. App. 336, 345; Board v. Sutliff, 97 Fed. 270, 279, 38 C. C. A. 167, 176.

Another complaint of the plaintiff in error is that the trial court held that the presumption was that the bonds were valid, and that the burden of proof was upon the county to establish the fact that they had been exchanged for unauthorized obligations of the plaintiff in error. That ruling was made in this state of the case: The bank pleaded that it was a bona fide holder of its bonds, and that they were issued in exchange for warrants which evidenced valid debts of the county. The county denied these allegations, and averred that the warrants for which the bonds were exchanged evidenced unauthorized obligations of the plaintiff in error. The bank put its bonds and coupons in evidence. The county admitted that the bank was an innocent purchaser of them for value before maturity, without any notice of any defenses to them, except such as the constitution and laws imposed upon it. Where was the burden of proof under these circumstances? Conceding that the debt of the county exceeded its constitutional limitation on September 1, 1879, there were still two classes of valid warrants which the county might have issued, and which it might have had outstanding on January 2, 1882, when these bonds were exchanged for warrants: (1) Those issued for debts incurred prior to September 1, 1879 (Board v. Standley, 24 Colo. 1, 49 Pac. 23); and (2) those issued after that date for the current expenses of the county for each year against taxes levied to pay those current expenses (Town-Lot Co. v. Lane [S. D.] 62 N. W. 982, 984; Shannon v. City of Huron [S. D.] 69 N. W. 598, 600; Lawrence Co. v. Meade Co., 10 S. D. 175, 177, 72 N. W. 405; Darling v. Taylor [N. D.] 75 N. W. 766; Grant v. City of Davenport, 36 Iowa, 396, 404; Spillman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. 279; State v. Medbery, 7 Ohio St. 522, 528; State v. Parkinson, 5 Nev. 15, 24–28).

There might, therefore, have been legal outstanding county warrants of this county in 1882,—those representing the lawful obligations just specified,—for which the bonds in action could have been legally exchanged. These were refunding bonds, and the fact that the debt of the county exceeded its constitutional limitation when they were issued did not in itself invalidate them, because they did not create or increase the debt of the county, but simply changed its form. Hughes Co. v. Livingston (C. C. A.) 104 Fed. 306, 317; Board v. Standley, 24 Colo. 1, 9, 49 Pac. 23. There might, therefore, have been a state of facts under which these bonds might have been valid under the constitution and laws of Colorado. There might have been valid warrants outstanding for which these bonds were exchanged, and if, under the constitution and laws, there might have been a state of facts or circumstances under which the bonds could have been lawfully issued, the legal presumption was that such a state of facts existed, and that the bonds were valid, because the presumption was that the officers of the county faithfully discharged their duties, and

issued the bonds in exchange for lawful warrants only. City of Evansville v. Dennett, 161 U. S. 434, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; Chaffee Co. v. Potter, 142 U. S. 355, 363, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040; National Life Ins. Co. of Montpelier v. Board of Education of City of Huron, 62 Fed. 778, 10 C. C. A. 637, 27 U. S. App. 244; Rollins & Sons v. Board of Com'rs of Gunnison Co., 80 Fed. 692, 699, 26 C. C. A. 91, 98, 49 U. S. App. 399, 412. Moreover, the answer admitted that these bonds were exchanged for county warrants which it alleged were illegal and void; and this admission alone threw the burden of proving the invalidity of these warrants upon the county, because the warrants themselves were prima facie evidence of the justice and legality of the debts they evidenced. Rollins v. Board, 90 Fed. 575, 577, 33 C. C. A. 181, 183, 62 U. S. App. 255, 259; Speer v. Board, 88 Fed. 749, 756, 32 C. C. A. 101, 108, 60 U. S. App. 38, 52; Board v. Standley, 24 Colo. 1, 49 Pac. 23.

The fact that the bank unnecessarily alleged in its complaint that the debts evidenced by the warrants for which its bonds were issued were legal obligations of the county did not impose upon it the burden of proving that fact by other evidence than the bonds themselves, because both the bonds and the warrants, for which the answer admitted they were issued, were prima facie evidence of the validity of the debts they evidenced, and because the complaint stated a good cause of action without that averment. Unnecessary allegations in a complaint require proof that would not have been essential if the pleading had been confined to the indispensable averments only, when such allegations constitute an essential part of the statement of the cause of action. If the cause of action is well stated without them, they may be disregarded as surplusage, and they do not affect the issue. Geer v. Board, 97 Fed. 435, 442, 38 C. C. A. 250, 257; 1 Estee, Pl. & Prac. (4th Ed.) § 191; Bliss, Code Pl. § 215.

The result is that each of the bonds in question in this action constitutes a separate and independent promise of this county, and forms the basis of a separate cause of action against it; each bond is sustained by the legal presumption which accompanies the warrants for which it was exchanged that they evidenced legal obligations of the county, and by the presumption which accompanies the bond itself that it was issued in exchange for valid warrants of the county; the burden of proof is upon the county to establish the fact that the debt in exchange for which each bond was issued was an unauthorized obligation of the quasi municipality; and the presumptions of validity which accompany each bond go with it to the end of the trial, and must prevail, unless the county proves by a fair preponderance of competent evidence that the debt which it evidences was, in its inception, unauthorized and void.

There are other assignments of error in the trial of this case, but they are not material to its determination in this court, because, if the rulings of which these assignments complain had been in accord with the views of the counsel for the plaintiff in error, the judgment must still have been against them, because they failed to produce any sufficient evidence of the identity of the warrants in question, and without that essential link in their chain of alleged facts their defense was

fatally defective. The presumption is that there were no errors in these rulings, but, if there were, they were errors without prejudice, and constituted no ground for reversal. For this reason, they will not be discussed or considered.

The action of the court in refusing a continuance and in denying a motion for a new trial on the ground of newly-discovered evidence is assigned as error. But rulings upon motions for a continuance and upon motions for new trials are the mere exercise of the discretion of the court, and do not constitute errors of law which are reviewable in the national appellate courts. Counsel for the plaintiff in error concede this to be the general rule, but argue that motions for new trials upon the ground of newly-discovered evidence constitute exceptions to the rule, and may be reviewed by writ of error. The position is not tenable. The court exercises its discretion in granting or refusing a motion for a new trial upon the latter ground as much as when the ground is that the verdict was excessive, or that there was irregularity in the course of the trial. The decisions of the supreme court clearly indicate that the rulings of the trial courts upon motions for new trials upon the ground of newly-discovered evidence constitute no exception to the general rule. Henderson v. Moore, 5 Cranch, 11, 3 L. Ed. 22; Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085; Mattox v. U. S., 146 U. S. 140, 147, 13 Sup. Ct. 50, 36 L. Ed. 917. The judgment below is affirmed.

CALDWELL, Circuit Judge (dissenting). At the time the bonds in suit were issued the county of Lake had exceeded the constitutional limit of indebtedness by hundreds of thousands of dollars. Under an act authorizing counties to fund their valid outstanding indebtedness, the county authorities issued funding bonds to the amount of half a million of dollars. These bonds were issued to retire county warrants, 90 per cent. of which had been issued after the constitutional limit of indebtedness had been reached and exceeded, and were, of course, void for that reason. The fact of this indebtedness was sufficiently disclosed by the public-debt record of the county, accessible to all, and of which the holders of warrants and all others were bound to take notice. The warrants in redemption of which the bonds were issued were offered in evidence and rejected. These warrants were found in the clerk's office in the proper place for redeemed warrants of the county, where they had been for many years in official custody; and the dates, amounts of the warrants, and names and memoranda wrapped around the warrants tallied so perfectly with the bonds in suit as to leave little doubt that these were the warrants in redemption of which the bonds were issued. At any rate, it was for the jury to say whether they were the warrants, and the evidence offered undoubtedly tended to prove that fact, and was therefore competent. It is a radical error to hold that county warrants which were issued and dated after the constitutional limit of indebtedness had been reached and exceeded will be presumed to have been issued for an indebtedness contracted prior to the time the constitutional limit of indebtedness was reached. There is no such presumption of law. In this very case the fact is notoriously otherwise. The constitu-

tional limit of indebtedness had been reached years before the warrants were issued. No valid debt could be created after the constitutional limit of indebtedness had been reached, and all indebtedness contracted, as well as the warrants issued for the same, were alike void. When it is shown that 90 per cent. of the warrants in redemption of which the bonds were issued were void, the bonds are void in toto. Borough of Millerstown v. Frederick, 114 Pa. 435, 7 Atl. 156; 1 Pars. Cont. 457. At most, the holder of the bonds would recover only the amount of the valid indebtedness included in the bonds.

The court, after indulging in a rhapsody over the rule of evidence which excludes hearsay testimony,—a matter quite foreign to any question of law or fact in the case,—proceeds to declare a series of presumptions of law which make it absolutely impossible for the county to prove a fact as open and notorious as the existence of the county itself. The presumptions declared are arbitrary, contrary to known facts, and have no foundation in the rules of evidence. The rules of evidence laid down by the court are too exclusive. They exclude the facts of the case, and determine it upon presumptions which no jury would ever deduce from the facts. There is no recital in these bonds that they do not exceed the constitutional limit of indebtedness, and the county is not, therefore, estopped by the recitals from showing that fact. Gunnison Co. v. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065. In the case last cited, bonds of the very same series of these in suit were held void by the supreme court of the United States. Beyond all doubt, this whole series of bonds is void, and they can be upheld only by overruling all rational rules for the investigation of truth in a court of justice. The judgment of the circuit court should be reversed.