## LAVILLE P. SPERRY v. ESTATE OF FRANKLIN MOORE.

*Claim against estate—Statute of limitations—Cross-examination— Open account—Account stated.*

The general provisions of the Statute of Limitations apply to claims against the estates of decedents.   Comp. L., § 7157.

Testimony by a third party that he had heard a decedent orally admit having bought certain property and become a debtor therefor at some previous time not specified, but which the witness inferred was comparatively recent, did not avail to release from the bar of the Statute of Limitations a claim against his estate upon an open account.

42 MICH.—45.

A claimant against an estate sought to free an open account fr$\cup$ the bar of the Statute of Limitations by showing that within the statutory period the decedent had orally admitted that the price of a bull bought from a firm of which he was a member was properly credited to him individually; also that by his oral consent an order drawn by the claimant on another firm of which he was a member, was carried to his individual credit. But there was testimony that no one had accounted for the price of the bull, and there was nothing to show decedent's right to apply the price of it as a set-off to any account held by the claimant against him, and the defense also claimed that decedent had not assumed to apply to his benefit the credit arising from the payment of the order. The jury found against the claimant. *Held* that the account was not released from the bar of the statute.

A claim was made against an estate for a balance due on an open account, but an amendment to the demand only claimed a balance struck on an adjustment of mutual accounts by the decedent's oral admission of a specific balance. But the jury found against the claim. *Held* that it could not prevail unless evidence that might have changed the result was improperly excluded.

An account stated may doubtless be worked out without any written undertaking or acknowledgment, and may be proved by unsigned writings; but it cannot overcome the bar of the Statute of Limitations unless it is supported by evidence of some writing signed by the party to be charged.

Testimony is not admissible if the party against whom it is to be used, or those in privity with him, has no opportunity to cross-examine the witness.

Where the assignor of a claim against an estate was called to prove the claim, and his cross-examination was delayed by the claimant to accommodate another witness, and he died before it could be taken, it was *held* proper to exclude his testimony.

Error to Wayne. Submitted October 17, 1879. Decided January 7, 1880.

Appeal from the disallowance of a claim by commissioners on claims. The claim was also rejected in the court below, and claimant brings error.

*Moore & Moore* for plaintiff in error. Where a witness dies before he can be cross-examined, his testimony on a former trial of the same issue is admissible, *Gass v. Stinson*, 3 Sumn., 104; contra, *Kissam v. Forrest*, 25

Wend., 650: overruled, 7 Hill, 465; see *Phil. &c. R. R. v. Spearen*, 47 Penn. St., 300.

*Beakes & Cutcheon* for defendant in error. As to latitude on cross-examination, see *Stewart v. People*, 23 Mich., 75; *Arnold v. Nye*, 23 Mich., 295; *Thompson v. Richards*, 14 Mich., 184; *People v. Morrigan*, 29 Mich., 7; *Hamilton v. People*, 29 Mich., 195; *D. & M. R. R. v. Van Steinburg*, 17 Mich., 109; *Beebe v. Knapp*, 28 Mich., 72; *O'Donnell v. Segar*, 25 Mich., 372; *Jacobson v. Metzger*, 35 Mich., 103; *Wilson v. Wagar*, 26 Mich., 457; *N. Y. Iron Mine v. Negaunee Bank*, 39 Mich., 644; the right of cross-examination is indispensable to the reception of testimony, *Cazenove v. Vaughan*, 1 M. & S., 4; *Brown v. Kimball*, 25 Wend., 259; *People v. Cole*, 43 N. Y., 508; *Fuller v. Rice*, 4 Gray, 345; *Wood v. Keyes*, 14 Allen, 238; a deposition taken by commission cannot be used unless all material cross-interrogatories are answered, *Gilpin v. Consequa*, 3 Wash., 187; *Ketland v. Bissett*, 1 Wash., 144; *Smith v. Griffith*, 3 Hill, 339.

GRAVES, J. Sperry brought this proceeding to establish a claim against the estate of the late Franklin Moore. The matter was contested before the claim commissioners, and there disallowed, and on appeal to the circuit court the jury also rejected it. The claimant then brought the case into this court for revision, and he alleges sixty-one errors. His counsel refers to a portion only, but reminds the court that none are waived. He derives his title to what he seeks to recover by assignment from his father-in-law, William B. Stewart, made March 16, 1876, and when he launched the proceeding he set forth his demand as $40,000, due him as assignee of William B. Stewart from the estate of Franklin Moore, deceased, "upon an open account between said Stewart and said Moore, deceased." The demand so defined and stated was explained in detail by an accompanying bill of particulars. When the investigation was going on before the commissioners the claimant put his assignor upon

the stand, but before the estate had opportunity to cross-examine, the witness was found dead. Following that event the claimant amended his demand by setting up a charge for an amount of $3,900, ascertained and agreed upon in November, 1875, as due from Moore to Stewart on an adjustment of mutual accounts between them, including the account in the bill of particulars.

The assignment from William B. Stewart to claimant, and which is the source of claimant's title and the limit of his right, is confined to specific dates or transactions, and it arranges what it assumes to transfer under two heads:

*First.* Such balance of account in favor of William B. Stewart and against Franklin Moore, as existed at the date of the assignment, for lumbering by William B. Stewart and for lumbering by Robert Stewart & Co.; and in looking and locating pine lands; in running logs; in tracing trespassers on lands; for cash paid on current expenses; for moneys advanced on Franklin Moore's business, and for interest on accounts due.

*Second.* All balances due at the date of the assignment for dealings between William B. Stewart and Franklin Moore, from May 1, 1864, to March 16, 1876, and all accounts of dealings between said parties within that interval.

It is not proposed to see how far the claim, as detailed in the bill of particulars, can find proper support in the assignment. But one thing will not escape notice. The assignment excludes all pretense of an assumption to transfer any right accruing for services, except for services furnished by William B. Stewart or by the firm of Robert Stewart & Co., and that the original statement of claim excludes everything not belonging to an open account between William B. Stewart and Franklin Moore, whilst the charge introduced by amendment shuts out all matters except a balance struck on an adjustment of their mutual accounts by their mutual agreement. There is no occasion to trace out the consequences of these considerations.

One of the main objections raised against the claim is that it is barred by the statute of limitations, and this ground of defense is sufficiently serious to warrant an examination of the case, in view of it, before proceeding to any other question. If the objection is as complete and far-reaching as supposed, it must substantially put an end to the case.

We find the record singular in not giving the time of Mr. Moore's death. But there is ground for inferring that it was later than 1876, and as the brief for the defense fixes it on the 17th of January, 1877, we are inclined to consider that as the true time. Certainly the claimant cannot object.

The statute of limitations bars all actions of assumpsit or on the case founded on any contract or liability, express or implied, unless commenced within six years next after the cause of action has accrued (Comp. L., § 7148), and the cause of action is deemed to have accrued in actions to recover the balance due upon a mutual and open account current, at the time of the last item proved in such account (§ 7152), and in case a claim set up against an estate has become barred, the law forbids its allowance. Comp. L., § 4428.

The application of the general provisions of the statute of limitations to cases against estates is obvious and unquestioned. Such cases are distinctly contemplated. § 7157.

The present action must be first considered in that shape which was originally given to it by the claimant. At the outset, as already noticed, he preferred his claim as one for the balance due him as assignee of William B. Stewart, upon an open account between William B. Stewart and Franklin Moore. Now, there is no pretense of any proof of an item of such an account of later date than nine years or more previous to Mr. Moore's death, unless three matters to be noticed presently are considered as exceptions. And if it be contended that during the intervening period Mr. Moore made any promise or

acknowledgment which ought to cut off the defense, the answer is conclusive. The statute is explicit that in such cases no acknowledgment or promise shall be evidence of a continuing contract, whereby to take a case out of the provisions of the chapter, or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing signed by the party to be charged thereby (§ 7160). And there is no claim that Mr. Moore during the time mentioned made any written promise or acknowledgment.

We shall not stop to see whether all the components of the supposed account are properly matters of account, but proceed to notice the three transactions which are claimed to have vitalized the whole series of dealings.

The first consists of a charge for certain cheese said to have been sold to Moore. A witness testified that in 1874 or 1875, and whilst Moore and Stewart were overhauling their accounts, he heard Moore admit to Stewart the previous receipt of the cheese, and saw him itemize it; that it did not appear at what time the cheese had been furnished; but the witness inferred that it "was a comparatively late transaction."

This evidence can be pushed no farther than to show an oral admission by Moore that he became a purchaser of the cheese, and a debtor therefor at some previous and indefinite time. It does not fix or tend to fix a buying and selling at the time of the admission, and it cannot be regarded as proving a dealing at that date so as to affect the application of the bar. The surrounding circumstances would rather incline the mind to look for the transaction at about the time of the occurrence of the other dealings against which the statute had already run.

The other two matters relied on to exempt the account from the operation of the statute require but few words. The claimant contended that his assignor, Stewart, bought a bull of decedent in 1873, and that the latter in 1874 or 1875 orally admitted that the price was rightly set

down to his individual credit by Stewart. It was also contended by the claimant that an order drawn by Stewart in 1874 on Moore, Foote & Co. in favor of Kingsbury for $75, and paid by the drawees, was by Moore's oral assent, carried to his individual credit by Stewart. On the other hand the defense claimed that the bull belonged to the firm of F. & S. Moore; that they sold him to Stewart, and that no one had accounted for the price. The defense further claimed that decedent did not assume to apply to his benefit, as alleged, the credit arising to Moore, Foote & Co. from the payment of the order. There was no showing of, any right in Franklin Moore to apply the price of the bull as ·a set-off to Stewart's account against him, unless, as insisted by the claimant, the former was owner at the time of the sale to Stewart. The controversy in regard to these matters was distinctly submitted to the jury and they found against the claimant. It may be well enough to add that the evidence on both sides shows that Stewart knew that the bull belonged to F. & S. Moore, and that the credit resulting from the payment of the order belonged to the drawees, Moore, Foote & Co. As the case went to the jury it is clear that when Franklin Moore died there was no open account which was not barred by the statute.

The statement of claim introduced by amendment is inconsistent with the other. It regards the account as closed by conversion into an account stated, and the theory is that in 1874 or 1875, and after the account had been long barred, Stewart and Moore came together, and after examination of dealings, agreed upon a specific sum as a balance due from Moore to Stewart. There was evidence of such a transaction and evidence to the contrary; but it was admitted that no writing was made. The claimant's case was that the parties inspected the old accounts, and that Moore orally admitted a specific balance in Stewart's favor. The judge fairly submitted this ·disputed question of fact, as we think, to the jury, and they found that no settlement took place, and that

Moore did not admit that he was indebted. Therefore, in this aspect, the case failed unless evidence which might have changed the result was improperly excluded.

There is another consideration. No doubt an account stated may be worked out without any written undertaking or written acknowledment by the party against whom the balance is ascertained and established, and may be proved by unsigned writings. But the question is upon the bearing of such a proceeding on the operation of the statute of limitations. After an account has been left standing long enough to be barred, can the production from it of an account stated by an oral process be held sufficient to deprive the party of the benefit of the statute? Or must the account stated be supported by evidence of some writing signed by the party to' be charged, in order to hinder the statute from continuing to run against the original matters of account? The Supreme Court of Massachusetts has recently decided that such writing is necessary (*Chace v. Trafford*, 116 Mass., 529), and in our opinion such is the correct view of the subject.

Whilst the claim as originally presented was being heard before the commissioners, the claimant, as we have seen, called as a witness his assignor, William B. Stewart, and he was sworn and examined at some length, and the defense commenced cross-examining. But the claimant interposed and asked the defense to suspend this cross-examination and allow Robert Stewart, who desired to leave, to be then examined. The estate consented and the rest of the day was occupied in the examination of this witness. On the arrival of the hour for adjourning it was agreed that William B. Stewart should be produced for the purpose of having his cross-examination pursued and completed at the adjourned time in the morning. He was sent, however, by the claimant to subpœna witnesses, and failed to return until the afternoon of the next day, and did not appear at all,

and in the succeeding night, and before the defense was given any opportunity to cross-examine, he disappeared and was never afterwards seen alive. A few days later his body was found floating in the river. The circuit judge excluded the offer to show the portion of testimony the deceased witness had given when he was removed from the stand for the claimant's accommodation, and this is now urged as error.

The ruling was regular and is borne out by common justice as well as authority. "The benefit of cross-examination is an essential condition to the reception of direct testimony" (*Heath v. Waters*, 40 Mich., 457, 471) and the virtue of the principle can never be more apparent than in a case where a claimant, in character of assignee, is seeking to establish a claim against an estate by the oath of his assignor. In a great variety of cases the effect of a witness' testimony must remain a matter of complete uncertainty during the continuance of the right of cross-examination, and enough is discovered in this record to suggest that such was probably the fact here.

The doctrine as laid down is that in order to render the testimony taken admissible, it must appear that the party against whom it is to be used, or those in privity, had opportunity to cross-examine. Buller's N. P., 239, 242; 1 Starkie's Ev., 61, 62, 409, 34; Best's Ev. (Wood's ed.), § 496; 1 Greenl. Ev., § 163; 1 Whart. Ev., § 177. There was here no such opportunity, and the want of it was caused by the act of the claimant, and the estate was in no way answerable for it. If the claimant had allowed the examination of the witness to proceed there is every reason to suppose it would have been completed, and the case is therefore stronger than it would be if the interruption had been due exclusively to the witness' death.

We think the case calls for no further discussion. Whatever questions are agitated apart from those dis-

posed of by what we have said do not seem of sufficient merit to justify special notice.

The order is affirmed with costs, and the clerk will certify this determination to the circuit and probate courts.

The other Justices concurred.