Killops, Appellant, vs. Stephens and others, Respondents. $\frac{66}{74}\frac{571}{40}$

*September 22 — October 12, 1886.*

*(1, 2) Foreclosure of mortgage: Reference: Account stated. (3, 4) Surrender of note and mortgage: Presumption of payment. (5) Bill of exceptions: Amendments to be incorporated.*

1. In an action to foreclose a mortgage, where the defendant alleges numerous payments on account, exceeding the amount of the debt, and counterclaims for a balance due him, the referee to whom the cause is referred to hear, try, and determine should state an account between the parties.

2. The testimony before a referee established the fact that an account had been stated between the parties of payments made on certain mortgages, and there was no claim of a mistake and no attempt to surcharge such account. The referee made no specific finding as to such accounting, but reported that the mortgages had been paid in full — a conclusion which could not be reached without disregarding the accounting and allowing to the defendant certain payments which had been disallowed therein. The report was confirmed and the complaint dismissed. *Held,* error.

3. The unexplained surrender by a creditor to his debtor of the evidence of indebtedness, raises a presumption that the debt has been paid.

4. The balance due on three mortgages was claimed by the creditor to be about $5,000, and by the mortgagor to be about $4,000. A final accounting was postponed, but the mortgagor paid $4,000 to the creditor, and joined with him in making a note for $1,000, which was discounted at the bank and the proceeds paid to the creditor, who afterwards paid such note. When the $4,000 was paid the creditor delivered the three mortgages and the notes secured thereby to the mortgagor, and discharged two of the mortgages of record, but, the assignment of the third to him not having been recorded, he did not discharge that mortgage. *Held,* that the creditor might still enforce the undischarged mortgage as security for the balance which should be found due to him on the final accounting.

5. The amendments to the bill of exceptions should be incorporated therein, and the bill as finally settled should be fairly written out.

APPEAL from the Circuit Court for *Waukesha* County.

This action was brought to foreclose a mortgage executed by the defendant *Stephens* to one Cook, for the plaintiff, dated June 1, 1870, to secure the payment of $2,600, with ten per cent. interest. It was thereafter duly assigned by Cook to the plaintiff. The answer of *Stephens* alleges as a defense that the mortgage is paid, and contains a counterclaim for a balance alleged to be due from the plaintiff to him.

The circuit court referred the issues in the action to Vernon Tichenor, Esq., to hear, try, and determine the same. The cause was tried before the referee in 1884, who afterwards found, among other things not necessary to be stated, that the mortgage debt was fully paid before the action was commenced, and hence that the complaint should be dismissed with costs. The referee duly reported to the court such findings of fact and conclusion of law, together with the proceedings had and the testimony taken before him. He did not find any sum due the defendant on his counterclaim, neither did he state an account between the parties.

A motion by the plaintiff to set aside the referee's report was denied, and a motion by the defendant to confirm the same was granted, by the court. Thereupon judgment for the defendant was entered dismissing the complaint, with costs. The plaintiff appeals from such judgment. The case is further stated in the opinion.

*David W. Small*, for the appellant.

For the respondents there were briefs by *Sumner & Tullar*, and oral argument by *Mr. Tullar*. To the point that the surrender of the note and mortgage to the mortgagor raised a presumption of payment, they cited *Smith v. Harper*, 5 Cal. 329; 2 Jones on Mortg. sec. 913; *Ormsby v. Barr*, 21 Mich. 474; *Braman v. Bingham*, 26 N. Y. 483; *Levy v. Merrill*, 52 How. Pr. 360; 1 Greenl. on Ev. sec. 38.

LYON, J. The plaintiff held two mortgages against the defendant *Stephens*, other than that sought to be foreclosed by this action, both executed in 1869, and each given to secure a debt of $1,000, and interest. January 16, 1883, *Stephens* paid the plaintiff, on account of the three mortgage debts, $4,000. The plaintiff thereupon delivered up to *Stephens* the three mortgages, together with the notes they were respectively given to secure, and, by a proper entry in the record thereof, he then discharged the two $1,000 mortgages. The assignment by Cook to him of the mortgage in suit not having been recorded, the plaintiff sought to have Cook discharge that mortgage, but Cook was absent and such discharge was not obtained. It does not appear that the plaintiff agreed to discharge the Cook mortgage, although he was apparently willing to do so, or that there was any consideration for such an agreement. When the $4,000 payment was made, the plaintiff and *Stephens* executed their note for $1,000, which was discounted by a bank, and the proceeds paid to the plaintiff, who afterwards paid such note.

The mortgagor, *Stephens*, claims to have paid the plaintiff, on account of the three mortgage debts, between December 28, 1869, and April 3, 1882, about $5,450. No payment is claimed after the last-mentioned date, until the $4,000 was paid in January, 1883. These alleged payments are thirty-six in number, only about twenty of which are evidenced by the receipts of the plaintiff or vouchers, and none of them are indorsed upon any of such notes or mortgages. They vary in amount from small sums to $1,000. The plaintiff claims that the parties accounted together in April, 1876, concerning payments theretofore made by *Stephens* on the mortgage debts, and found that he had so paid $509.09. The defendant claims to have paid $1.071.59 before that date, and his account of such payments contains sixteen items, only three or four of which are covered

by vouchers. The items in defendant's account accruing after April 8, 1876, not covered by receipts or vouchers, are charges for cash paid as follows: November 11, 1876, $100; February 1, 1877, $100; September 11, 1879, $113; October, 1879, $1,000; total, $1,313. The plaintiff claims that in September, 1876, the defendant entered into an agreement in writing to pay the plaintiff ten per cent. interest on the two $1,000 mortgages, instead of seven per cent. therein stipulated, in consideration of an extension by the plaintiff of the time of payment of the mortgage debts.

The controversy before the referee arose upon the following questions: (1) Did the parties state an account of payments made by *Stephens* prior to April 8, 1876? (2) Are the items in the mortgagor's account of payments, not covered by receipts of the plaintiff or other vouchers, or any of them, sufficiently proved? and (3) Did the mortgagor agree to increase the rate of interest to ten per cent. on the debts secured by the two $1,000 mortgages?

Undoubtedly the referee should have stated an account between the parties, showing which of the disputed items in the defendant's account of payments were allowed by him, and which, if any, he disallowed, and showing, also, what rate of interest he allowed on the $1,000 mortgages. Such account would necessarily show whether he found that an account of payments was stated by the parties, April 8, 1876, as claimed. He failed to do so, but only found generally that the mortgage debt had been fully paid. This finding is excepted to as being unsupported by and contrary to the evidence, but no exception was taken to the failure of the referee to state an account. Had such an exception been interposed, although no other errors were committed, it might be our duty to send the case back for such accounting.

In the present condition of the record we can only ascertain by inference from his report how the referee determined

Killops vs. Stephens and others.

the questions in controversy before him. A computation will show, we think, that he must have negatived the claim that a binding account of payments was stated by the parties, April 8, 1876, and have found that many, if not all, of the alleged payments, not covered by receipts or vouchers, were actually made as claimed by the defendant. It seems that on no other hypothesis could the referee have found that the mortgage debt had been paid. If he found that all the disputed payments were made, and that there had been no such accounting, it is probable that the payments would equal the mortgage debt, even though interest at the rate of ten per cent. be computed on the two $1,000 mortgages after September, 1876, the date when it is claimed the interest was increased.

In the view we have taken of the case after a most careful examination of the testimony, the first question above stated, which the referee must have determined against the plaintiff, is a controlling one. That question is, Did the parties, on April 8, 1876, state an account of payments made on the three mortgages to that date, and agree upon and settle the amount thereof? If they did so, inasmuch as there is no claim of mistake in the settlement, or any attempt to surcharge the account, they are bound by it, and only the agreed sum can be allowed the defendant. If only that sum is so allowed, it is quite apparent that, however the other controverted questions may be determined, there is some amount yet unpaid on the debt secured by the mortgage in suit.

Alexander Cook, Esq., an attorney at law, to whom the mortgage in suit was first executed, and who had much to do with the business transactions between these parties, testified that the parties came to his office on April 8, 1876, and requested him to estimate the amount due on the three mortgages. They then talked over the matter of payments, and agreed that sums amounting in the aggregate to $509.09

had been paid on the mortgages. The witness figured on that basis, and ascertained the amount unpaid. At the same time he made a memorandum of his computation, which he preserved, and produced to the referee. It is as follows:

"Due from *Stephens*.................................. $7,578 16
Deducting payments made .......................... 593 52

Left........................................... $6,984 64"

Probably the amount so deducted includes interest on such payments. The plaintiff testified substantially as did Mr. Cook; and, further, that at the time of such settlement all the papers pertaining to the transaction were brought in, and certain receipts for taxes, held by the defendant as vouchers for some of the payments, were surrendered to the plaintiff.

This testimony of Mr. Cook and the plaintiff was not controverted. Neither the defendant nor any of his witnesses denied the accounting and the result thereof as thus testified to. The testimony of Mr. Cook and the plaintiff in that behalf must therefore be taken and held to be true, and the facts to which they testified proved. Those facts show a valid account stated, which binds the parties to the sum therein agreed upon as the aggregate amount of payments theretofore made. As already observed, we think the inference is irresistible that the referee held the defendant was not bound by the settlement and statement of the account of payments made by the parties in April, 1876, even if he did not hold that there was no such transaction between them. This was an error, the correction of which might, and probably would, as the testimony now stands, result in a judgment for the plaintiff. Because of this error the report of the referee should not have been confirmed, and the judgment founded thereon cannot be upheld.

Killops vs. Stephens and others.

It was urged in argument that the surrender by the plaintiff to the defendant of the three notes and mortgages, the discharge of the two $1,000 mortgages, and the efforts of the plaintiff to procure the discharge of the mortgage in suit, raise a presumption that the mortgage debts had been paid. It might also be claimed that such surrender impeaches the otherwise undisputed evidence of the transaction of April 8, 1876. It is true, no doubt, that an unexplained surrender by a creditor to his debtor of the evidence of indebtedness, or the unexplained possession thereof by the debtor, raises a presumption that the debt has been paid. But we have here no such case. The circumstances of the surrender of these securities, and the discharge and attempted discharge of the mortgages, are disclosed by the testimony. They are briefly these: The parties had not accounted together since April, 1876. Many payments had been made on the mortgage debts before January 16, 1883. The plaintiff called upon the defendant to pay the balance due him. The defendant was ready and willing to do so. The plaintiff claimed there was about $5,000 due him. The defendant claimed that the amount due was only from $3,600 to $4,000. For reasons satisfactory to the parties the final accounting was postponed for a short time. The defendant then paid the plaintiff $4,000 in cash, and joined him in a note on which the plaintiff realized $1,000 more. So the plaintiff received all the money he claimed to be due him, and the only effect of a surrender of the old securities and a discharge of all the mortgages, would at most have been to substitute the personal obligation of the defendant in place of a mortgage on real estate for the amount due him in excess of $4,000. Had the mortgage in suit been actually discharged, perhaps the plaintiff's remedy would have been only against the defendant personally to recover any unpaid balance due him. But it was not discharged, and the record discloses nothing which renders it inequitable

for the plaintiff to hold it as security for such balance, and it is immaterial whether the indebtedness be evidenced by the original note, or the note of January 16, 1883, for $1,000, which the plaintiff paid. Under these circumstances, the surrender of the securities, the discharge of the two $1,000 mortgages, and the attempted discharge of the mortgage in suit, have but little significance as an impeachment of the otherwise uncontradicted evidence showing that the parties stated an account in April, 1876, of the payments theretofore made.

The testimony bearing upon the other questions in controversy before the referee is conflicting. Inasmuch as the judgment must be reversed for the reasons above stated, we deem it our duty to abstain from any expression of opinion, at the present time, upon the weight of the testimony, or what propositions it proves or fails to prove. Before doing so an account should be stated, as before indicated, to the end that we may know precisely the adjudication of the referee and trial court upon each disputed item in the account. The circuit court may order another reference for that purpose, or may state the account without the intervention of a referee, and may, in its discretion, allow further testimony to be given, and will thereupon render such judgment as justice and equity require.

Many amendments were allowed by the court to the proposed bill of exceptions. These are not incorporated in the bill as settled and signed. When settled, it should have been re-engrossed, and the amendments incorporated in it. The omission to do so has cost us much labor and perplexity. Should the case come here again on the merits, the bill, as finally settled by the court, must be fairly written out for the signature of the judge. This is the correct and only authorized practice.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for further proceedings in accordance with this opinion.