## KRUEGER v. DODGE *et al.*

1.  Where parties to a written contract requiring installments to be paid at various times, and the payment of interest on installments not so paid, had an attorney calculate the amount of principal and interest due on such contract, and agreed that the amount arrived at was correct, there was an account stated.

2.  Under Comp. Laws, § 5260, providing that a wife cannot be a witness either for or against her husband without his consent, testimony

of a wife is inadmissible against her husband's objection to show that she was present at the computation and statement of an account between her husband and the other party to the action, and that such account was not computed in accordance with the contract on which it was based.

3.  Parol evidence of a settlement under an account stated as to an amount due under a written contract is not inadmissible as tending to contradict the written contract.

(Opinion filed October 2, 1901.)

Appeal from circuit court, Grant county. HON. A. W. CAMPBELL, Judge.

Action by William C. Krueger against A. C. Dodge and another, as executors of the estate of John S. Proctor, deceased, to enforce specific performance of a contract for the sale of realty. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

*Thomas L. Bouck* and *H. H. Potter,* for respondent.

*Geo. S. Rix* and *E. T. Young,* for appellant.

FULLER, P. J.    Before the commencement of this action to enforce performance of a contract to sell real estate, plaintiff tendered the full amount alleged to be due according to an account stated, and demanded a deed. Judgment was entered on findings of fact and conclusions of law favorable to plaintiff, and the defendants appeal.

It is admitted that on the 13th day of January, 1891, respondent and John S. Proctor, since deceased, entered into a valid contract by the terms of which the latter bound himself to convey to the former the land in controversy in consideration of 20,000 bushels of wheat, the delivery of not less than 3,000 bushels of which was to be made, respectively, on the 1st day of October, 1892, 1893, 1894, 1895, 1896, 1897, 1898. "And in default of said yearly payments and deliveries of said three thousand bushels of wheat on said days of payment and delivery as aforesaid, should said party of the first

part extend the time of payment and delivery thereof, said party of the second part, for himself, his heirs, executors, administrators, and assigns, agrees to pay interest at the rate of eight per cent, per annum on all such deferred or extended payments and deliveries from the time the same shall be extended until the same is paid, and which amount shall be determined by the deficiency or difference of the amount or quantity of three thousand bushels of wheat to be delivered as aforesaid and the amount or quantity actually paid and delivered at the rate or price of seventy-five cents per bushel for each and every bushel of wheat of such deficiency." The most important question presented for our consideration is whether the following finding of fact is sustained by the evidence: "That on the 8th day of October, 1896, a settlement was had between the plaintiff and said John S. Proctor, and upon such settlement an account stated was had between them, whereby it was agreed and determined between said plaintiff and said John S. Proctor that on the said 8th day of October, 1896, said Krueger was indebted to said John S. Proctor for deferred payments on said contract up to that date in the sum of $2,348.75 for principal and $784.62 for interest on same, making in all the sum of $3,133.37." Being an illiterate foreigner, and unable to read and write the English language, respondent kept no account of the wheat delivered from year to year, and, aside from some authenticated copies of receipts which Mr. Proctor had given him, and which appellants were permitted to introduce in evidence, there is nothing to challenge, even by way of inference, the accuracy of the foregoing finding. That respondent was delinquent to some extent on the 8th day of October, 1896, and appeared with Mr. Proctor at the office of S. S. Lockhart, an attorney at law, for the purpose of ascertaining the actual amount then due according to the terms of the written contract, is conceded. During the lifetime of Mr. Proctor there was

no controversy between the parties to this contract, and concerning what took place at the office of Mr. Lockhart that witness testified, in effect, that the parties readily arrived at an agreement as to how the account then stood; that the aggregate amount of wheat in default and then demandable was figured and agreed upon, and its contract value, with interest at 8 per cent, per annum, was calculated by himself and Mr. Proctor, who furnished the data upon which all computation was based. Mr. Lockhart testified in part as follows: "Mr. Proctor and Mr. Krueger came into my office, and Mr. Proctor stated that heretofore they each had an attorney, but this time they had agreed to come before me, and settle up there. They arrived at an agreement as to how the account stood at the time, and interest was there computed by himself and Mr. Proctor. Also figured interest up to that time on the account under the contract—on the contract for the sale of his farm, Q. What did you do, Mr. Lockhart? A. I computed the interest from the data given to me by them. Q. Do you remember what year or years that included? A. No; I could not reccollect what years it included. They gave me the data, but I don't recollect what years, or where the payments started from, or the account started from. Q. It was more than one year? A. Yes; it was several accounts. Q. Several years? A. Yes, sir. Q. State whether or not you made any memorandum in writing that day. A. I did make a memorandum at the request of Mr. Krueger, I think, after we got through with the work. Q. You may state how you came to make any memorandum in writing. A. After we had completed the computation, Mr. Krueger requested me to make a memorandum so he would know how they stood, or know what the result was. Q. You may state, Mr. Lockhart, whether or not the memorandum you made on that paper was a correct memorandum of the adjustment of the accounts made that day. A. Yes,

sir. Q. You say that you had figured them over? A. I figured it over from the different accounts for the different years given to me by Mr. Krueger and Mr. Proctor, and Mr. Proctor also figured a part of them. I could not say whether or not he figured all of them at that time, but we practically agreed. Q. You may state how the figures that Mr. Proctor, made, if any correspond with the figures that are on that paper. A. They are practically the same, within a few cents more or less. All the difference was what might have been caused by either of us not carrying out the fractions." Cross-examination: "Q. You say you don't remember just what was figured, and the only thing you remember absolutely about it is this balance from some data (or some premise which is mutual), was reached, and this balance was struck? A. That was reached as the balance struck between them. Q. Whatever they figured? A. This is a thorough account, as I understand it, on that contract as it stood at that time. Our figuring had covered both the payments he had been in default before and what was due on the contract that fall." The memorandum which was offered and received in evidence, is as follows:

                                October 8, 1896.
Balance of deferred payments ........................$2,348.75
Accrued interest to date .............................. 784.62

    Total ............................................$3,133.37
    Contract between John S. Proctor and W. C. Krueger."

While this memorandum was neither submitted to nor signed by Mr. Proctor, it is shown to be a summary of a settlement concerning which Mr. Proctor at the time expressed entire satisfaction. Treating the subject now under consideration and in support of the proposition that "the strong presumption is that the parties included in a settlement all the items each has against the other that are due,

and clear and convincing proof is required to rebut this presumption," the author of the article in 1 Am. & Eng. Enc. Law, at page 553, cites numerous supporting authorities. Nor is a contract expressed in writing and signed by the parties essential to the existence of an account stated, but from such facts as this record discloses the law raises the presumption of correctness and an implied agreement that may be enforced. In Claire v. Claire, 10 Neb. 57, 4 N. W. 412, the court say: "An account stated is an agreement between the parties to an account that all the items thereof are correct. The simple rendering of an account between the parties and agreeing upon the amount due are sufficient facts on which to maintain an action." So in an action on an account stated, which was not signed by either party, oral evidence was held admissible to prove that the defendant had acknowledged its correctness. Vinal v. Burrill, 16 Pick. 401; Sperry v. Moore's Estate, 42 Mich, 353, 4 N. W. 13; Samson v. Freedman, 102 N. Y. 699, 7 N. E. 419. In Brown v. Vandyke, 8 N. J. Eq. 795, 55 Am. Dec. 250, it is held that: "In order to make an account a stated account, it is not necessary that it be signed by the parties. A settled account will be decreed conclusive between the parties unless some fraud, mistake, omission, or inaccuracy is shown; and in case of settled accounts the court will not generally open the account, but will at most only grant liberty to surcharge and falsify, unless in cases of apparent fraud." Although no defect of the character above indicated was pleaded, no restriction whatever was placed upon appellants at the trial with reference to the introduction of evidence, and yet there is nothing tending to impeach the foregoing memorandum for any cause whatever. The headnote, which harmonizes perfectly with the opinion in Albrecht v. Gies, 33 Mich. 389, is as follows: "Evidence tending to show that the parties met and settled up, and that a balance was struck and agreed upon, is admissible

to prove an account stated, and is sufficient to authorize the submission of the question as one of fact to the jury." · The assent of the parties to the correctness of an account stated, though unwritten, need not be expressed, but may be inferred from circumstances. Volkening v. DeGraaf, 81 N. Y. 268; Lockwood v. Thorne, 11 N. Y. 170, 62 Am. Dec. 81; Watkins v. Ford, 69 Mich, 357, 37 N. W. 300. The contention of counsel for appellants that the evidence introduced in support of the complaint amounts to a parol modification of a written contract, and therefore contravenes the statute of frauds is without merit. Many of the cases examined in writing this opinion relate to accounts stated with reference to sealed instruments, and the law and facts in Killops v. Stephens, 66 Wis. 571, 29 N. W. 390, are peculiarly applicable to this case. That was an action to foreclose certain mortgages on real property, and the question was whether the parties had stated an account of payments made. From page 575, 66 Wis. and page 392, 29 N. W., we quote as follows: "In the view we have taken of the case after a most careful examination of the testimony, the first question, above stated, which the referee must have determined against the plaintiff, is a controlling one. That question is, did the parties, on April 8, 1876, state an account of payments made on the three mortgages to that date, and agree upon and settle the amount thereof? If they did so, inasmuch as there is no claim of mistake in the settlement, or any attempt to surcharge the account, they are bound by it, and only the agreed sum can be allowed the defendant. * * ·* Alexander ·Cook, Esq., an attorney at law, to whom the mortgage in suit was first executed, and who had much to do with the business transactions between these parties, testified that the parties came to his office on April 8, 1876, and requested him to estimate the amount due on the three mortgages: They then talked over the matter of payments,

and agreed that sums amounting in the aggregate to $509.09 had been paid on the mortgages. The witness figured on that basis, and ascertained the amount unpaid. At the same time he made a memorandum of his computation, which he preserved, and produced to the referee. It is as follows: Due from Stephens, $7,578.16; deducting payments made, $593.52, left $6,984.64." The foregoing, together with the testimony of the witness who made the memorandum, was held sufficient to "show a valid account stated, which binds the parties to the sum therein agreed upon as the aggregate amount of payments theretofore made." In reviewing findings of fact made by a trial court, it must be presumed on appeal that the decision of such court is sustained by the weight of evidence, and, unless it appears that the testimony clearly preponderates against such decision, the presumption that the findings are right must prevail. Randall v. Burke Tp., 4 S. D., 337, 57 N. W. 4; Fieldman v. Trumbower, 7 S. D. 408, 64 N. W. 189; Reagan v. McKibben, 11 S. D. 270, 76 N. W. 943; Littlejohn v. Creamery Co., 14 S. D. 312, 85 N. W. 588. Being entirely satisfied that the evidence in this case does not preponderate against the only finding of fact of which appellants complain, such finding will not be disturbed.

While it does not affirmatively appear that the wife of respondent was present at the time the settlement was made, the ruling of the court in sustaining an objection to appellants' offer to prove by her that the amount due was figured by the parties in a manner not in accordance with the contract is assigned as error. Section 5260 of the Compiled Laws expressly provides that a wife cannot be used as a witness either for or against her husband, without his consent, and there is no merit in the contention.

The action of the trial court with reference to this case is sustained both upon principle and authority, and the judgment appealed from is affirmed.