## UNION PAC. R. CO. v. PERRINE.

(Circuit Court of Appeals, Eighth Circuit. July 15, 1920.)

No. 5515.

**Evidence ⊂⇒323 (4)—Testimony of value based on unauthenticated market record incompetent as hearsay.**

In an action for the value of hay alleged to have been negligently destroyed by fire by defendant railroad company, where there was testimony that the value of hay where destroyed was governed by the Kansas City market, testimony as to the market value of such hay in Kansas City on the day of the fire, based in one case on a bulletin and in the other on records, *held* hearsay and incompetent, where neither the bulletin nor record was authenticated or produced, and it was not shown by whom they were made.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action at law by E. Leon Perrine against the Union Pacific Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

C. A. Magaw, of Omaha, Neb. (N. H. Loomis, Edson Rich, and T. W. Bockes, all of Omaha, Neb., on the brief), for plaintiff in error.

Thomas M. Morrow, of Scotts Bluff, Neb. (William Morrow, of Scotts Bluff, Neb., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The Union Pacific Railroad Company complains of alleged errors in the trial of this action, which E. Leon Perrine brought against it for alleged negligence in the construction, maintenance, and operation of one of its locomotives over its railroad, whereby, as he alleged, sparks from which were permitted and caused to escape and set fires, which on April 9, 1917, burned up 1,000 tons of alfalfa hay, a stack cover, and a hay carrier, which he owned and which lay alongside the north line of the right of way of the company at Elm Creek, in Nebraska, to his damage in the sum of $24,148.29. The company denied the negligence. There was a trial, a verdict, and a judgment against the company for $14,758.74.

One of the principal issues at the trial was the value at the time of the fire of the alfalfa hay burned, and the company insists that there was prejudicial error in the admission of the testimony of Perrine and Keeves as to the market price and market value of hay at Kansas City at that time. There was substantial evidence at the trial that Elm Creek is in a country which produced large quantities of alfalfa hay in excess of the amounts there consumed; that the plaintiff was engaged in grinding this hay into alfalfa meal, and for that purpose had placed his mill and accumulated and stacked a large amount of this hay along the north side of the company's right of way; that this hay had been purchased by him under contracts with the producers made during the

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

267 F.—42

preceding nine months; that the cost of this hay to Mr. Perrine was about $10.25 per ton; that when it had been burned in the spring of 1917 surplus alfalfa hay was not abundant in the country in the immediate vicinity of Elm Creek; that there was no established open market for it there; that the nearest open market was at Kansas City; that the freight rate between Kansas City and Elm Creek was $3 per ton, the cost of baling $1.75 to $2.25 per ton, and the cost of loading 50 to 70 cents per ton.

Mr. Reeves, a witness for Mr. Perrine, testified that he believed he bought for Mr. Perrine all the hay that was burned; that this hay, which was in stack at Elm Creek, which was burned, cost around $10.25 per ton; that hay to replace it could not be bought in the vicinity of Elm Creek; that the hay burned was reasonably worth $24 per ton at Elm Creek on April 9, 1917, when the hay was destroyed; that the market price of No. 1 alfalfa hay at Kansas City on that day was $24. On cross-examination he was asked when he was in Kansas City, and he answered that he was there in the fall before the fire. Asked how he knew then, or who told him, what the market price of hay was in Kansas City, and other similar questions, he testified that he got his information from the weighing scales office in Kansas City, when he went in there the other day. He was testifying on June 15 or 16, 1919, so that "the other day" was probably more than two years after the fire. Asked specifically who told him that hay was worth $24 per ton at Kansas City on April 9, 1917, he answered that he saw it without being told there in the office of the weighing scales. Asked, "All you know about the market price of hay is what you saw on some bulletin at some scales; is that right?" He replied, "That is apparently right." Thereupon counsel for the defendant moved to strike out the testimony of this witness in regard to the market price of hay as being hearsay and not the best evidence. The court overruled the motion, the defendant excepted, and the witness on his redirect examination went on to testify that Kansas City or St. Louis set the market price for hay.

Mr. Perrine testified that the Kansas City market on No. 1 alfalfa, shown by actual sales on April 9, 1917, was $24 per ton. Asked how he knew what the market price was there on that day, this colloquy followed:

"A. Because I looked up the records, the original records, on that.

"Q. Because you looked at some records, and what somebody told you about it? A. The record is the best evidence in the world.

"Q. Well, just answer my question. A. I looked at the records and know from that.

"Mr. Magaw: We now move to strike out the testimony of the witness as to value in Kansas City, for the reason that it is based on hearsay and is not the best evidence.

"The Court: Objection overruled. My understanding of the law is that one who examines the record may testify as to its contents.

"Mr. Magaw: We renew the objection on the ground that it is not the best evidence. We are certainly entitled to have that record and an opportunity to cross-examine on it.

"The Court: Objection overruled.

"(Exception allowed.)"

What the fugitive bulletin Reeves saw or the records Perrine looked up were, who made them, whether those who saw and heard the making of the sales at Kansas City on April 9, 1917, or others to whom the eyewitnesses told or wrote what they saw or heard, and whether those who made the bulletin or those who made the records correctly made or printed therein what they saw or heard, or what was told or written to them concerning the sales of alfalfa hay on the open market at Kansas City on April 9, 1917, no one came to testify, and on this subject the record contains no evidence.

This is an action at law between Mr. Perrine and the Union Pacific Company. The fugitive bulletin Reeves saw more than two years after April 9, 1917, and the nameless records Perrine looked up, were not made by the company or by any one in privity with it, and it never admitted their correctness. Written hearsay is not more competent than spoken hearsay. The enforcement of the rule that hearsay is incompetent evidence is essential to the preservation of the liberty of the person and the rights to property. Its enforcement is not discretionary with the courts, and its violation is fatal error. Whoever may have made the bulletin or the nameless records, they were made by strangers to the parties to this suit, they were mere narratives of past transactions, and the rule against hearsay sternly forbids the reception as evidence of the repetition of the unverified narratives of strangers, whether oral or written, to determine the issues between litigants, and requires that only under the solemnity of an oath or affirmation of the strangers whose statements are offered, and then only after due notice and an opportunity to hear their testimony and to cross-examine them, shall their story become evidence against a litigant.

Neither the bulletin which Reeves saw nor the records which Perrine looked up were competent evidence of the market price of alfalfa hay in Kansas City on April 9, 1917, because the strangers who made them had not testified in the presence and subject to the cross-examination of the defendant that they contained true narratives of the sale of alfalfa hay or of the market price thereof at Kansas City on April 9, 1917. Board of Commissioners v. Keene Five-Cent Savings Bank, 108 Fed. 505, 510, 47 C. C. A. 464 and cases there cited; Edwards v. Bates County, 99 Fed. 905, 906, 40 C. C. A. 161, 162; Thomas v. United States, 156 Fed. 897, 914, 915, 84 C. C. A. 477, 494, 495, 17 L. R. A. (N. S.) 720; Heath v. Waters, 40 Mich. 457, 471; Sperry v. Moore's Estate, 42 Mich. 353, 361, 4 N. W. 13. Nor, if they had been thus verified, would the testimony of Reeves or Perrine to their contents have been competent, in the absence of proof that the bulletin and the records had been lost, or that it was impracticable to produce them or legally authenticated copies of them in evidence, because they were better evidence of their contents than the testimony of those who saw them.

Counsel for Mr. Perrine attempts to meet the objections to the admission of this hearsay testimony by the argument that Reeves, the buyer, and Perrine, the owner, of the hay that was burned, were competent to testify to the value of this hay at Elm Creek, on account of their relation to it and their experience in buying and dealing in it in

Nebraska. Let their competency so to testify be conceded. That is not the question presented here. The motions were not to strike out their testimony to the value of the hay at Elm Creek. They were to strike out their testimony to the market price and market value of alfalfa hay at Kansas City. They had testified to the market price and market value of hay at no other point, and their only means of knowledge of the market price and value at that city were the bulletin and the records. It was clear error to refuse to grant the motion to strike out their testimony on that subject.

Counsel for Mr. Perrine also contends that the judgment should not be reversed on account of these errors, because after the court had permitted the introduction of the incompetent evidence presented by the plaintiff, which has been considered, the defendant introduced an incompetent clipping from an Omaha newspaper purporting to disclose the sales of alfalfa hay at Omaha for $21 or $22 per ton on April 3 or 4, 1917, and because, if those prices should be taken as the value of the hay burned, the judgment was less than it should have been; but that clipping was not the only or the most persuasive evidence for the company. There was the testimony of Reeves that the burned hay cost Mr. Perrine about $10.25 per ton, and the testimony of several witnesses for the defendant that its value at Elm Creek when it was burned was from $10.50 to $14 per ton. An examination of the evidence has satisfied that the evidence on this subject of value is too conflicting to justify a court in drawing from it any basis for a computation that would indicate that the testimony erroneously received was not injurious to the company. On the other hand, the witnesses for Mr. Perrine testified that there was no market for alfalfa hay at Elm Creek at the time of the fire, that the nearest market was at Kansas City, and that the Kansas City market set the price at Elm Creek, subject to proper allowances for freight, baling, and loading. The value of this hay was one of the most important issues in this case, and the record leaves no doubt that the reception of the incompetent hearsay testimony of Perrine and Reeves must have been prejudicial to the defendant, and that on account of it a new trial should be directed.

Other alleged errors in the trial of this case have been discussed by counsel, but they are conditioned by the state of the evidence, which will undoubtedly be very different at the next trial, and for that reason a discussion of them is omitted.

Let the judgment below be reversed, and let a new trial be directed.