## CROWELL BROS. v. PANHANDLE GRAIN & ELEVATOR CO.

(Circuit Court of Appeals, Eighth Circuit. February 9, 1921. Rehearing Denied May 7, 1921.)

No. 5522.

1. **Trial ⊜⊐418—Demurrer to evidence waived by subsequent introduction of evidence.**

   A demurrer to plaintiff's evidence at the close of its main case is waived by the subsequent introduction of evidence to the merits by defendant.

2. **Appeal and error ⊜⊐237(3)—Sufficiency of evidence not reviewable, in absence of motion for directed verdict.**

   Where there was no request by defendants for direction of a verdict, and no demurrer to the evidence after the close of all the evidence the question of the sufficiency of the evidence to sustain a verdict for plaintiff is not reviewable in the appellate court.

3. **Evidence ⊜⊐320—Testimony held incompetent, as based on a mere repetition of hearsay.**

   On an issue as to whether two cars of cane seed shipped by defendants to plaintiff were of the kind and grade called for by the contract testimony of an inspector as to the kind and grade of samples tested by him, which he identified as coming from the cars in question only from his record, made from tickets giving the numbers of the cars, placed in the samples by some one of his assistants, to him unknown, who obtained them in the usual course of his business, *held* incompetent; the tickets themselves from which the record was made being merely hearsay evidence which would have been inadmissible, if offered.

4. **Evidence ⊜⊐67(3)—Evidence of character of seed when shipped, based on examination later, admissible, as condition presumed same.**

   Testimony of a witness as to character and mixture of cane seed when examined by him *held* admissible to show its character when delivered on a contract five months before; the presumption being that it was the same as when delivered.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by the Panhandle Grain & Elevator Company against Crowell Bros. Judgment for plaintiff, and defendants bring error. Reversed.

E. W. Snoddy, of Alva, Okl. (J. P. Grove, Sr., of Alva, Okl., on the brief), for plaintiffs in error.

John Tomerlin, of Oklahoma City, Okl. (W. H. Kimbrough, of Amarillo, Tex., and W. F. Wilson, of Oklahoma City, Okl., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. The writ of error in this case assails the legality of the proceedings at the trial of an action at law which resulted in a judgment against Crowell Bros., partners and sellers, and in favor of the Panhandle Grain & Elevator Company, a corporation, buyer of two cars of country-run black amber and orange cane seed, for $11,623.13, which the buyer had paid before it discovered the fact that the contents of the cars consisted of such a mixture of red amber

cane seed with black amber and orange cane seed that its delivery by the sellers fails to constitute a performance of the contract upon their part. The contract was made in February, 1918. Crowell Bros. shipped the two car loads from Alva, Okl., to Fort Worth, Tex., and drew drafts on the Panhandle Company for the purchase price thereof which it paid before the cars arrived at Forth Worth. Upon their arrival they were unloaded and the Panhandle Company discovered that they did not contain the cane seed it had bought, but a much less valuable mixture. Thereupon, on April 12, 1918, it notified Crowell Bros. of the character of the contents of the cars, that it had not bought the cane seed they contained, and that this cane seed was in storage with the Fort Worth Elevator Company, subject to their disposition. Receiving no answer to this letter, it wrote them again on April 18, 1918, sent them in its letter a statement of its expenses in receiving, storing, and obtaining an inspection of the cane seed, stated in its letter that it had drawn on them for the purchase price it had paid and for its expenses, amounting to $10,889.91, that if they would not pay the draft it would dispose of the seed as soon as possible for their account, that it should expect them to protect it against loss, that it would be better for them to handle the seed; but, if it was obliged to do so, it would handle it to the best advantage it could for their account. The Panhandle Company drew its draft for the $10,889.91, but Crowell Bros. neither paid it nor answered the company's letter. Therefore, on July 31, 1918, the Panhandle Company filed its complaint, setting forth the alleged facts which have been recited, and commenced this action. Crowell Bros. answered with a denial that the cane seed in the two cars was not of the character, kind, and quality sold to the plaintiff, and denied generally every material allegation of the complaint.

[1, 2] The first specification of error is the overruling of the Crowell Bros.' demurrer to the plaintiff's evidence, for the reason that such evidence was insufficient to sustain a verdict in favor of the Panhandle Company. Counsel devote the larger part of their brief to the discussion of the sufficiency of the evidence in this case to sustain the judgment. But this demurrer was interposed at the close of the Panhandle Company's evidence, it was overruled and an exception taken; but the defendants did not stand upon their exception, but thereafter introduced the testimony of many witnesses on the merits of the case in their own behalf. Defendants waive a demurrer to plaintiff's evidence at the close of its main case by the subsequent introduction of evidence to the merits in their own behalf. No request to instruct the jury to return a verdict for the defendants, no demurrer to the evidence was interposed after the close of all the evidence, and the jury returned a verdict for the Panhandle Company. The result is that the questions, was there any substantial evidence to sustain the verdict and judgment? and was the evidence sufficient to sustain them? have not been so presented under the established rules of the federal courts that they may be reviewed or considered by this court, and it must treat them as conclusively answered in the affirmative by the verdict. Barnard v. Randle, 110 Fed. 906, 907, 49 C. C. A.

177, 178; U. S. Fidelity & Guaranty Co. v. Board of Commissioners of Woodson County, Kan., 145 Fed. 144, 150, 76 C. C. A. 114, 120.

Counsel for Crowell Bros. complain that the court below refused to submit to the jury, at their request, the question whether the Panhandle Company, after its refusal to accept the delivery of the seed as a performance of the contract and after its offer to return it to Crowell Bros., did not make such an inconsistent use of it as constituted a waiver of its refusal to accept it and a ratification of the original contract, and that the court charged the jury that there was no substantial evidence in the case to sustain a finding to that effect. The evidence upon which his complaint is founded tended to establish these facts: After the Panhandle Company had refused to accept the cane seed in performance of the contract, had stored it with the Fort Worth Elevator Company, had drawn its draft on Crowell Bros. for the purchase price it had paid them, and had on April 18, 1918, notified them of its acts in this regard, and that if they did not pay its draft it would be better for them to handle the seed themselves, but that if they did not it would expect them to protect it against loss, and it would proceed to sell and handle it to the best advantage it possibly could for their account, and they had not answered any of the letters, it caused the seed that had been in one of the cars to be recleaned to discover what shrinkage had resulted, sent Crowell Bros. a statement of the result of the recleaning and weighing in a letter dated June 27, 1918, and drew a draft on them for $292.95, which it claimed they owed it regardless of the quality of the seed, because the contract price of the seed it actually received was $292.95 less than the amount of the drafts for the purchase price thereof which it had paid before the seed arrived. Again, when the seed arrived at Forth Worth it was unloaded and placed in the elevator of the Forth Worth Elevator Company in the name of the Panhandle Company, and there it remained and that company paid the storage and insurance charges thereon up to the time of the trial. Moreover, the Panhandle Company borrowed of the Forth Worth Elevator Company $1,800, but there was no evidence that it secured the payment of this debt by any lien on, or pledge of, this cane seed, or that the loan was made in reliance thereon.

Counsel argue that the evidence which has now been recited tended to prove that, although the Panhandle Company elected to rescind the contract in April, 1918, it affirmed and ratified it in June, 1918, and later. But this action is not founded on a rescission of the contract. It is based upon an affirmation thereof and on the failure of Crowell Bros. to perform their part of it. It is an action for money had and received by Crowell Bros. for the use and benefit of the Panhandle Company, for the moneys it paid before the seed arrived on the drafts of Crowell Bros. for the contract price of black amber and orange cane seed in the belief that they had shipped that seed when they had not, and the defense of Crowell Bros. was that the cane seed they shipped was that which they contracted to sell. Their answer to the plaintiff was a denial of its assertion that the cane seed they shipped was not the article described in the contract. Their defense is in fact a confession that they shipped the seed and an avoid-

ance of the effect thereof. Moreover, there is nothing in the evidence upon which they now seek to rely inconsistent with the original position of the plaintiff that it did not and would not accept the seed as a performance of the contract and that it held it subject to the order and for the benefit of Crowell Bros., and there was no error in the charge of the court that there was no evidence in the case that would sustain a finding by the jury that the Panhandle Company ever accepted the cane seed or waived its refusal to take it in performance of the contract, nor was there any error in the refusal of the court, at the request of Crowell Bros., to instruct the jury otherwise.

Mr. James E. Robinson was the chief grain inspector of the Fort Worth Grain & Cotton Exchange. He testified for the plaintiff that he inspected samples brought to him by assistants of the cane seed in question taken from the cars before they were unloaded, that he made a record of these inspections in his own handwriting in a book he had, and read this record to the court and jury. On cross-examination he testified that he did not take the samples of cane seed out of the cars himself. On further examination by defendants' counsel he testified:

"Q. And how did you get the information that these samples came from these cars?

"A. Why, they got the—when a man gets a sample, he puts a ticket on it and puts the ticket in the sample. * * *

"Q. What is the custom with reference to your inspection of those samples? Just explain again, in detail, how they come to you and how you know they came out of these cars.

"Mr. Grove (for Crowell Bros.): We object, because it calls for incompetent, irrelevant, and immaterial testimony. (Objection overruled. Defendants except.)

"A. Well, we emptied the samples out into something; when they bring them up here to make the inspection we empty the samples out and we use the sample bags again for sampling other grain. * * *

"Q. And that is the course of dealing and the custom that is employed in the examination of all the cars, is it?

"A. Yes, sir; that is what the United States government requires us to do. The government don't require the inspector to take the samples; we have men to take the samples, and they bring them to this office, and we inspect the stuff.

"Mr. Grove: We move to strike the answer of the witness to the preceding question and withdraw it from the consideration of the court and jury, because it is incompetent, irrelevant, and not responsive to the question. (Motion denied. Exception.)"

Thereupon the witness testified that certain certificates of inspections were prepared and issued under his supervision in strict accordance with the records he had made of the inspection of the samples. These certificates were signed, "J. E. Robinson, Chief Inspector, per H., Deputy," in the handwriting of Mr. Harrison, Mr. Robinson's clerk. They certified that the inspector, Robinson, had inspected the contents of the two cars, giving their numbers, and that they contained certain kinds of cane seed, and among others red amber cane seed. Mr. Robinson testified that these certificates corresponded with the records he made in the book he read to the jury, and that they were correct, except in one particular not material in this case. The certificates were offered and introduced in evidence without exception, but at the close of Mr. Robinson's testimony the defendants moved—

"to strike out the evidence of this inspector and these exhibits for the reason that they show upon their face they were not made by the officer whose deposition was being taken. They show upon their face that this man who testified there didn't make the inspection as chief inspector."

The court denied the motion and Crowell Bros. excepted. They now assign each of the rulings which have been recited as error, but the grounds of the motion last recited were clearly untenable. Concede that the certificates show on their face that they were not made by Robinson, whose deposition was being taken, but by Harrison, his clerk. Yet the testimony had shown that Harrison was authorized by Robinson to make the certificates in accordance with the record of inspection which Robinson had made of the samples and had recorded in the book in his own handwriting. The other ground of the motion that the certificates showed upon their face that Robinson did not make the inspections is demonstrated to be baseless by the certificates themselves, which although they were signed by Robinson, by Harrison, deputy, do not show on their face that Robinson did not make the inspections to which they refer, and the testimony had shown at the time this motion was made that he had made them. There was no error in denying the motion on the ground stated therein.

[3] The other rulings here challenged present the single question whether or not it was error to receive in evidence, at the point in the progress of the trial when it was received, the testimony of Chief Inspector Robinson to the ordinary and regular method and custom of making inspections of cane seed and other grain at the time and place of this inspection under similar circumstances. At the time this evidence was received the Panhandle Company was trying to qualify the certificates of inspection for admission in evidence, in order to prove by them that the contents of the two cars contained a deleterious quantity of red amber seed. It had introduced the testimony of Mr. Robinson to the effect that he had inspected some samples of cane seed and made a record thereof on March 21 and March 25, 1918, that he had no independent recollection of these inspections, that all he knew about it was what his record showed, that he did not take the samples out of cars 26011 and 20388 which contained the cane seed shipped by Crowell Bros., that they obtained samples of seed and grain by shoving triers down into the grain and pulling them out, that he did not know who used the triers to get the samples, that he had then three or four men taking samples, that he had the control and direction of them, and that they took the samples because the Fort Worth Elevator Company ordered them to take them. Asked how he got the information that the samples came from cars 26011 and 20388, he answered, over the objection and exception:

"Why, they got the—when a man gets a sample, he puts a ticket on it and puts the ticket in the sample. He has a ticket like that (indicating), and he puts the car numbers on it and where they are."

Here it was that the questions were asked and the rulings with regard to the custom and method of making the inspections were made. If, at the time these rulings were made, the evidence of the Panhandle

Company relative to the origin and inspection of the samples had been complete, and insufficient to justify a finding that these samples were taken from the contents of the two cars, it may be that the evidence of the method of inspection would have been inadmissible; but the Panhandle Company's evidence was not at that time complete, it was still coming in, the court could not know what the further testimony would be. An inspection made in the ordinary and regular method is presumptive evidence of an inspection with reasonable care while one made otherwise may lack such a presumption. One of the turning points in this case was the character of this inspection, and hence its weight as evidence. Under these circumstances it cannot be said that there was serious error in the rulings here made in permitting the proof of the ordinary course of inspection to be presented to the jury.

But, after the Panhandle Company had rested its case in chief, after the demurrer to its evidence had been overruled and Crowell Bros. had commenced to introduce testimony in their behalf, they moved the court to strike out the testimony of Robinson and excepted to the order denying that motion. They specify this ruling as error, and insist that all his testimony was either incompetent, because there was nothing but hearsay to sustain the claim of Crowell Bros. that the samples he examined and certified were taken from the contents of cars 26011 and 20388, or immaterial, because it had no tendency to determine any issue in the case. That issue was the character and value of the cane seed in the two cars. When this motion was made, the Panhandle Company had completed its evidence. Unless there was competent testimony in the case that the samples Robinson examined and certified were taken from the contents of cars 26011 and 20388, his entire testimony was immaterial, and the motion should have been granted. A diligent search of the record has failed to disclose any such evidence. Robinson testified that he did not take the samples, about which he spoke, from the contents of the cars himself, that he had three or four men under his control taking samples from various lots of grain and seeds, that he could not tell which one of them took the samples he examined and inspected in this case, that he had no independent recollection of the transaction, that all he knew about it was what his record showed, that that record was made by him, without any personal knowledge who took the samples or whence they came, and his statement therein that they were samples from those cars rested entirely on the facts that, "when a man gets a sample, he puts a ticket on it and puts the ticket in the sample and puts the car numbers on it and where they are."

But no witness came to say that he took the samples which Robinson testified about from the contents of cars 26011 and 20388, or that he put tickets in those samples with the numbers of those cars thereon, or that the tickets on those samples stated the truth in the writing thereon. Even if those who took the samples had told Robinson that they took them from the contents of those cars, and that they were fair samples of those contents, and that the writing on the tickets stated the truth and he had offered to testify to all this, his testimony would have

been nothing but hearsay, and therefore incompetent. It would be nothing but the statement that the man or men who took the samples told him these things. If the tickets themselves · had been produced and offered, as they were not, with the testimony of Robinson in this case, they would have been likewise incompetent, for they were nothing but written hearsay, nothing but the written statements of some unknown person·or persons not under oath, and written hearsay is no more competent than spoken hearsay. Whoever may have taken the samples which Robinson examined, or made the tickets in those samples, if there were any, was a stranger to the parties to this suit. His oral or written statements concerning the crucial issue in it were mere narratives of past transactions, and the ruling against hearsay sternly forbids the reception of evidence of the repetition of the unverified narratives of strangers, whether oral or written, to determine the issues between litigants, and requires that only under the solemnity of the oath or affirmation of the stranger upon whose statement reliance is placed, and then only, after due notice and an opportunity to· hear the testimony and to cross-examine him, shall his story become evidence against a litigant. Union Pacific Railroad Co. v. Perrine, 267 Fed. 657, 659 (C. C. A. 8th Circuit, filed July 15, 1920); Board of County Com'rs of Lake County v. Keene Five Cents Saving Bank, 108 Fed. 505, 510, 47 C. C. A. 464, 469, and cases there cited; Edwards v. Bates County, 99 Fed. 905, 906, 40 C. C. A. 161, 162; Thomas v. United States, 156 Fed. 897, 914, 915, 84 C. C. A. 477, 494, 495, 17 L. R. A. (N. S.) 720; Heath v. Waters, 40 Mich. 457, 471; Sperry v. Moore, 42 Mich. 353, 356, 361, 4 N. W. 13. There was no such evidence that the samples which Robinson examined and certified were taken from the contents of cars 26011 and 20388, and there was no basis, no foundation, for the admission of his testimony. It was immaterial, and should have been stricken from the case. That testimony was important, and was unavoidably influential in the disposition of the crucial issue in this case: the failure to take it from the jury could not have failed to be prejudicial to Crowell Bros., and its admission necessitates a new trial of this suit.

[4] There was no error in the reception of the testimony of the witness Hunter to the character of the cane seed in September, 1918. The presumption was that the mixture was of the same nature at that time as when delivered to the Panhandle Company, nor was there any error in the rulings sustaining the objection to the hypothetical question of Mr. Deck. The effect of the facts stated therein was a question of law, and it was immaterial what the witness thought that effect would be considered under the usages and customs of the grain trade.

Let the judgment below be reversed, and let the case be remanded to the court below, with directions to grant a new trial.