## UNITED STATES v. ELDER et al.

### (District Court, W. D. Kentucky. March 15, 1916.)

### No. 8027.

1. CRIMINAL LAW ☞432—EVIDENCE—HEARSAY—PUBLIC RECORDS—ADMISSIBILITY.

In a prosecution for violating the oleomargarine law (Act May 9, 1902, c. 784, 32 Stat. 193), as carrying on the business of retailing colored oleomargarine, etc., the government offered in evidence monthly returns of a manufacturer and wholesale dealer in oleomargarine, showing in detail the quantity taxed at one-fourth of a cent a pound, disposed of to persons including defendant. These returns were made on blanks furnished by the Internal Revenue Bureau, and were made to collector on affidavit of the employés of the manufacturer to enable the collector to collect a tax on the product. Such returns were not open to inspection by the public in general, but only to the internal revenue officer or agent. *Held* that, while public records of officials are admissible in evidence, as an exception to the hearsay rule, such returns could not be received, for they were not made by public officers, were not open to inspection by the public, and there was no showing that those employés of the manufacturer who made them could not be obtained as witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1021; Dec. Dig. ☞432.]

2. CRIMINAL LAW ☞662(4)—TRIAL—CONFRONTATION OF WITNESSES.

In such case the returns cannot be received, in view of Const. Amend. 6, giving an accused person the right to be confronted with the witnesses against him; the persons who made the returns not being shown to be dead, and the returns not falling within any exceptions to the rule.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1540; Dec. Dig. ☞662(4).]

At Law. Audley Elder and others were charged with violation of the oleomargarine law. On objection to evidence. Objection sustained.

Perry B. Miller, U. S. Atty., of Louisville, Ky.
George Du Relle, of Louisville, Ky., for defendants.

EVANS, District Judge. [1] For present purposes it will suffice to say, respecting the indictments in this and two other cases being tried at the same time, that they charge various violations of the oleomargarine law. For example, the defendants are charged with unlawfully carrying on the business of manufacturers of oleomargarine, with unlawfully furnishing it to others, and with unlawfully carrying on the business of retail dealers in colored oleomargarine. In support of these charges, and probably with more especial reference to the charge of manufacturing oleomargarine, the United States has offered in evidence certain of the monthly returns of a manufacturer and wholesale dealer in oleomargarine in Chicago, Ill., of certain oleomargarine taxed at one-fourth of a cent a pound, showing in detail the quantity of oleomargarine taxed at that rate disposed of by the manufacturer and wholesale dealer to certain persons in various parts of the country, including the defendants, or some of them, to whom some of it was possibly shipped. These monthly returns, on blanks

furnished by the Internal Revenue Bureau, were made to the collector of internal revenue for that district in Illinois in which Chicago is located, and upon each of which was an affidavit of one of the employés of the manufacturer in this form:

"I, ———, swear that the foregoing statements and details thereof in this return of oleomargarine taxed at ¼ cent a pound received and disposed of, likewise oleomargarine taxed at ¼ cent a pound on hand, are true."

This was signed by the affiant and followed by a jurat showing that it had been sworn to. As shown on its face, each of the returns alluded to was made monthly, and all those offered in testimony were dated and made within the three years next preceding the finding of the indictments. Whether the employé of the manufacturer personally knew the facts thus reported, or whether he ascertained them from the books of the manufacturer, does not appear. There was no effort to show that the persons in the employment of the manufacturer and wholesale dealer who actually made the sales or the shipments were dead, or were out of reach of the process of the court, or that their attendance as witnesses could not have been obtained, and the question presented is: Are such papers competent testimony on the trial of a person accused of the public offenses indicated?

There can be no doubt that public records and documents (which late writers on the law of evidence prefer to call official statements) required to be made by an official person may be used as testimony for certain purposes even in criminal cases. This rule has been announced in many opinions, but we refer only to Evanston v. Gunn, 99 U. S. 666, 25 L. Ed. 306, Sandy White v. U. S., 164 U. S. 103, 104, 17 Sup. Ct. 38, 41 L. Ed. 365, and Rollins v. Board of Com., 90 Fed. 581, 33 C. C. A. 181. The general rule is most clearly discussed in Greenleaf on Evidence, vol. 1 (16th Ed.) in sections 98, 99, 99a, 162m, 163, 163a, 163f, 470, 474, 475, 483, 484, 491, 493, 496, and 498. We need not do more than cite this elementary authority.

But does this general principle have any application to the question we are considering? For purposes of its own the government imposes taxation upon oleomargarine, and in order fully to enforce collection of that taxation it authorizes the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make regulations to the end that the taxation may be collected and frauds upon the revenue prevented or discovered. Among those regulations are those under which the papers we have referred to were returned. While the return of the manufacturer or wholesale dealer is filed with the collector, and is retained by him, it is not made by an official person. In making them the manufacturer or wholesale dealer acts in his own individual capacity and no other. He personally, and not officially, makes the return, not as evidence against any outside person, but in order that the revenue officers may keep up with and be able to search out the oleomargarine he sells or ships to others. In this way those officers obtain clews that may enable them to ferret out violations of the laws pertaining to oleomargarine. The returns thus made are not official statements—that is, statements made by an official person. The manufacturer of oleomargarine is required by the

regulations to enter daily in a book of the prescribed form the items which are ultimately put into the monthly returns, and the regulations then provide that:

"This book or form must always be kept at the manufactory and be always open to the inspection of any internal revenue officer or agent."

It is far from being a public record made by an officer. It is only a report made by a manufacturer of what he does. It cannot be examined or inspected by the public, but only by an "internal revenue officer or agent." The defendants here could have no access to them, for, so far as they are concerned, the book is the private property of the manufacturer. Defendants could have no opportunity, certainly no public opportunity, of ascertaining what the contents of those papers are. But the facts pertaining to the sales and shipments made by the manufacturer or wholesale dealer are known, and must necessarily be known, to the persons who made those sales and shipments, and who could testify to the actual facts respecting them, including the names of the consignees of shipments and the quantity of oleomargarine sold and shipped to each. Certainly there does not appear to be any necessity for any departure from the universal and most wholesome rule that no person can be convicted of a public offense upon mere hearsay testimony. Primary evidence from persons who know the facts was available and within reach. The mere trouble of getting the testimony cannot excuse its absence.

[2] The learned district attorney at the argument confessed his inability to produce the decision of any court directly supporting his contention, and certainly there is no statute which authorizes the admission of this sort of testimony in this kind of case. And indeed, if there had been any such statute, it might well have been subject to the ruling in Kirby v. United States, 174 U. S. 57, 19 Sup. Ct. 574, 43 L. Ed. 809, which held that a statute analogous to the one suggested was unconstitutional. The sixth amendment to the Constitution of the United States provides, generally, that in all criminal prosecutions the accused shall have the right to be confronted with the witness against him. True, decisions of the Supreme Court and other courts have sustained apparent exceptions to this constitutional rule, such, for example, as cases where the testimony of a dead witness was read at a second trial, or where certain records and public documents and registers were admitted, although there was no witness, except such documents, with which there could be confrontation. But those apparent exceptions are not real ones, and where the facts constituting the offense itself are necessary to be proved they must primarily be proved by living witnesses, who must confront the accused. They must testify under oath taken at the hearing, and full opportunity for cross-examination must be afforded the accused.

In determining the question before us it may suffice to say that the testimony, if any, against defendants, to be gleaned from the monthly returns, must come, if at all, from an outside statement made by one who is not shown to have been known to the defendants, nor to have been authorized by them to make any of the entries in the manufacturer's book used in consolidating the data into the monthly returns.

Those returns were made by one who was not an officer, by one who was not acting as the agent of the defendants, but in the interest of his own employer, by one who is not present in court, who does not confront the accused, who has not been sworn to testify upon the issues in this case, and in respect to whose statements the accused can have no opportunity for cross-examination. It would seem that these considerations are entirely conclusive of the question of the admissibility, even of sworn statements made ex parte by an employé of a manufacturer who was not an official, with whom the defendants had nothing to do, whom they did not know, and with the contents of whose statements they never had any acquaintance until they were presented at this hearing under circumstances excluding all opportunity for cross-examination or for testing the accuracy of the statements made by the manufacturer or his employé.

It seems to the court that these considerations conclusively establish the proposition that the testimony offered is in every respect mere hearsay and wholly inadmissible as against any one of the defendants for any purpose whatever, however much the entries on the monthly returns might refresh the memory of a witness who made them if testifying here. Without going into the matter further, it may be helpful to quote somewhat lengthily from the opinion of the Supreme Court in the case of Kirby v. United States, above referred to, wherein that court, speaking through Mr. Justice Harlan, as reported in 174 U. S. at pages 53, 54, and 55, 19 Sup. Ct. at pages 576 and 577 (43 L. Ed. 809), said:

"As shown by the above statement, the charge against Kirby was that on a named day he feloniously received and had in his possession with intent to convert to his own use and gain certain personal property of the United States, theretofore feloniously stolen, taken, and carried away by Wallace, Baxter, and King, who had been indicted and convicted of the offense alleged to have been committed by them. Notwithstanding the conviction of Wallace, Baxter, and King, it was incumbent upon the government, in order to make its charge against Kirby, to establish beyond reasonable doubt (1) that the property described in the indictment was in fact stolen from the United States; (2) that the defendant received or retained it in his possession, with intent to convert it to his own use or gain; and (3) that he received or retained it with knowledge that it had been stolen from the United States. How did the government attempt to prove the essential fact that the property was stolen from the United States? In no other way than by the production of a record showing the conviction under a separate indictment of Wallace, Baxter and King—the judgments against Wallace and Baxter resting wholly upon their respective pleas of guilty, while the judgment against King rested upon a trial and verdict of guilty. With the record of those convictions out of the present case, there was no evidence whatever to show that the property alleged to have been received by Kirby was stolen from the United States.

"We are of the opinion that the trial court erred in admitting in evidence the record of the convictions of Wallace, Baxter, and King, and then in its charge saying that, in the absence of proof to the contrary, the fact that the property was stolen from the United States was sufficiently established against Kirby by the mere production of the record showing the conviction of the principal felons. Where the statute makes the conviction of the principal thief a condition precedent to the trial and punishment of a receiver of the stolen property, the record of the trial of the former would be evidence in the prosecution against the receiver to show that the principal felon had been convicted; for a fact of that nature could only be established by a record.

The record of the conviction of the principals could not, however, be used to establish, against the alleged receiver, charged with the commission of another and substantive crime, the essential fact that the property alleged to have been feloniously received by him was actually stolen from the United States. Kirby was not present when Wallace and Baxter confessed their crime by pleas of guilty. nor when King was proved to be guilty by witnesses who personally testified before the jury. Nor was Kirby entitled of right to participate in the trial of the principal felons. If present at that trial he would not *have been permitted to examine Wallace and Baxter upon their pleas of guilty, nor cross-examine the witnesses introduced against King, nor introduce witnesses to prove that they were not in fact guilty of the offense charged against them. If he had sought to do either of those things—even upon the ground that the conviction of the principal felons might be taken as establishing prima facie a vital fact in the separate prosecution against himself 'as the receiver of the property—the court would have informed him that he was not being tried and could not be permitted in any wise to interfere with the trial of the principal felons. And yet the court below instructed the jury that the conviction of the principal felons upon an indictment against them alone was sufficient prima facie to show, as against Kirby, indicted for another offense, the existence of the fact that the property was stolen—a fact which, it is conceded, the United States was bound to establish beyond a reasonable doubt in order to obtain a verdict of guilty against him.

"One of the fundamental guaranties of life and liberty is found in the sixth amendment of the Constitution of the United States, which provides that 'in all criminal prosecutions the accused shall * * * be confronted with the witnesses against him.' Instead of confronting Kirby with witnesses to establish the vital fact that the property alleged to have been received by him had been stolen from the United States, he was confronted only with the record of another criminal prosecution, with which he had no connection and the evidence in which was not given in his presence. The record showing the result of the trial of the principal felons was undoubtedly evidence, as against *them*, in respect of every fact essential to show *their* guilt. But a fact which can be primarily established only by witnesses cannot be proved against an accused—charged with a different offense for which he may be convicted without reference to the principal offender—except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases."

Under these circumstances we must hold that the objections to the testimony thus offered should be and they are sustained.